**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JULIA ANGWIN, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SUPERHUMAN PLATFORM, INC.,<br><br>Defendant. | **CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded**<br><br>**Case No. 26 Civ. 02005** |

Plaintiff Julia Angwin, on behalf of herself and all others similarly situated, through counsel, alleges as follows against Defendant Superhuman Platform, Inc., the owner and operator of Grammarly ("Superhuman" or "Grammarly"):

## INTRODUCTION

1.      In this action, Julia Angwin, an award-winning journalist and editor, challenges Grammarly's misappropriation of the names and identities of hundreds of journalists, authors, writers, and editors to earn profits for Grammarly and its owner, Superhuman.

2.      In 2025, Grammarly launched a tool called Expert Review that enabled Grammarly users to receive feedback on their writing from well-known journalists like Ms. Angwin, and even famous authors like Stephen King. For $12 a month, Grammarly users could upload their writing and receive real-time comments on how to improve their prose from Ms. Angwin, Mr. King, and other acclaimed writers. While Grammarly used this new feature to sell more subscriptions and Grammarly's users got helpful feedback from acclaimed writers, there was one big problem: Grammarly did not ask the expert writers for the right to use their names or to offer feedback on their behalf.

3.      Contrary to the apparent belief of some tech companies, it is unlawful to appropriate peoples' names and identities for commercial purposes, whether those people are famous or not. Through this action, Ms. Angwin seeks to stop Grammarly and its owner, Superhuman, from trading on her name and those of hundreds of other journalists, authors, editors, and even lawyers, and to stop Grammarly from attributing words to them that they never uttered and advice that they never gave.

**PARTIES**

4.      Julia Angwin is a resident of New York County, New York.

5.      Ms. Angwin is an award-winning investigative journalist who has spent the past 25 years reporting on privacy, technology, and business. Ms. Angwin is currently a *New York Times* contributing Opinion editor. She is the founder of *Proof News*, a nonprofit journalism studio that launched in 2024. In 2018, Ms. Angwin founded *The Markup*, a nonprofit newsroom that investigates the impacts of technology on society. From 2014 to 2018, Ms. Angwin was a senior reporter at the independent news organization *ProPublica*, where she led an investigative team that was a Finalist for a Pulitzer Prize in Explanatory Reporting in 2016 and won a Gerald Loeb Award in 2018. From 2000 to 2013, Ms. Angwin was a reporter at the *Wall Street Journal*, where she led a privacy investigative team that was a finalist for the Pulitzer Prize in Explanatory Reporting in 2012 and won a Gerald Loeb Award in 2010. She was a member of a *Wall Street Journal* team that won the Pulitzer Prize in Explanatory Reporting in 2003.

6.      Ms. Angwin is also the author of the *New York Times* bestseller "Dragnet Nation: A Quest for Privacy, Security and Freedom in a World of Relentless Surveillance" (Times Books, 2014) and "Stealing MySpace: The Battle to Control the Most Popular Website in America" (Random House, March 2009). Over the past decade, Ms. Angwin's reporting has focused heavily

on technology companies based in Silicon Valley and elsewhere in California and, consequently, she has routinely worked in California to cover the technology industry.

7.    Ms. Angwin has a B.A. in Mathematics from the University of Chicago and an MBA from Columbia University's Graduate School of Business.

8.    Superhuman Platforms, Inc. (Superhuman) is a private company incorporated and headquartered in San Francisco, California that owns and operates Grammarly, an artificial intelligence (AI) digital application that helps people to improve their writing. Grammarly provides free services to tens of millions of people. For a monthly payment, Grammarly also offers a "Pro" edition of Grammarly for eligible individuals and teams and an "Enterprise" edition for larger organizations. Superhuman and Grammarly own and operate the Expert Review tool that is central to this action. Upon information and belief, Superhuman and Grammarly provide services—including the Expert Review tool—to at least thousands of residents of this District, and they maintain an office in New York City.

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2), because this is a class action where the amount in controversy exceeds $5 million, exclusive of interest and costs, and the Plaintiff and most of the Class Members are not citizens of California, while the Defendant Superhuman is a resident of California.

10.    This Court also has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1), because Plaintiff Angwin is a citizen of New York and Defendant Superhuman is a citizen of California, and the controversy exceeds $75,000, exclusive of interest and costs.

11.    There is personal jurisdiction over Defendant in this District, because the violations at issue in this action occurred in this District, where Defendant maintains a major office for Grammarly's operation and staff, where Defendant provides Expert Review services to thousands

of users, and where Defendant unlawfully appropriated the name and identity of Plaintiff, who lives and works as a journalist in New York City.

12.    Venue is proper in this District under 28 U.S.C. § 1391(b), because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.

**FACTUAL BACKGROUND**

**A.  In 2025, Grammarly Launched an "Expert Review" Tool That Offers Writing Feedback and Comments From Well-Known Authors and Journalists, But Without the Consent of Those "Experts".**

13.    For years, Grammarly has helped tens of millions of people to improve their writing through digital services. Grammarly's own promotional materials state that that 40 million people use Grammarly each day.

14.    Grammarly offers its basic services for free to the public, like helping users to write without grammatical mistakes and typos. But for $12 a month, Grammarly offers individuals a broader range of services, including helping them to rewrite sentences, adjust their writing tone, and write more fluently. Grammarly also provides paid users personal suggestions, detects plagiarism and AI generated text, and generates text in response to AI prompts.

15.    Grammarly claims that it earns $700 million per year, and in 2025 Grammarly raised $1 billion in financing to expand its offerings to grow its market dominance.

16.    In August 2025, Grammarly launched an Expert Review tool for its paying customers that purports to provide Grammarly users with suggested comments and feedback from "experts," including well-known authors, journalists, editors, and even lawyers. Some examples of Grammarly's "experts" include Stephen King, astrophysicist Neil deGrasse Tyson, *New York Times* tech reporter Kashmir Hill, journalist Kara Swisher, and Julie Brill, the former Chief Privacy Officer of Microsoft and former Commissioner of the Federal Trade Commission.

17.     When paying customers of Grammarly use the Expert Review tool, they are first told by Grammarly that it is "reading your text" and "finding experts to review your piece." Then, once Grammarly has identified relevant experts to provide feedback, Grammarly tells its customers that it is "Applying ideas from" various experts. For example, Grammarly says, "Applying ideas from Julia Angwin" and provides a description of Ms. Angwin as an "Investigative journalist, Pulitzer Prize finalist, former editor-in-chief at the Markup, author of notable works on digital privacy and accountability".

18.     Then, directly next to specific portions of the text, Grammarly states the name of the expert with a brief comment about how to improve that text, like "Lead with personal stake"; "Sharpen the opening"; "Simplify technical tracker description"; "Frame legal stakes succinctly"; "Clarify the 'so what' after each finding"; or "Clarify crowd-sourced method upfront." The following images are examples of comments attributed to Julia Angwin in Grammarly's Expert Review.



19.     If the Grammarly user then clicks on the comment, a more detailed suggestion is provided, and Grammarly states that the "suggestion is inspired" by the relevant expert.  Next, the user can choose to insert an example of what the expert is suggesting by clicking on a button.

20. Upon information and belief, Grammarly structured the Expert Review tool so that its customers would believe that the "experts" like Ms. Angwin were providing their perspective, insight, feedback, and comments on the users' writing or, at a minimum, that the experts were associated with feedback and comments being provided.

21. But Grammarly failed to obtain the consent of Ms. Angwin and hundreds of other "experts" before Grammarly launched the product nationwide, sold subscriptions that included Expert Review using those experts' names, and began earning revenue and profits from appropriating the names and identities of Ms. Angwin and others. In fact, Grammarly did not even tell these experts that their names or identities would be used in Expert Review.

22. Grammarly is not only using these experts' names, but is also using their publicly-available work to craft writing advice that these experts did not give. Grammarly is analyzing Ms. Angwin's work and, based on that work, is drawing conclusions about what advice she would give to Grammarly's users. But in many cases Ms. Angwin may not agree with that advice. Grammarly may draw incorrect conclusions about her writing or about the context in which she would use different writing styles. Users are then left with the impression that they received writing advice from Ms. Angwin that she had no knowledge of and may disagree with entirely.

**B. Ms. Angwin Learns From a News Report That Grammarly Was Misappropriating Her Name and Identity for Profit, and Those of Other Journalists and Reporters.**

23. Rather than Grammarly asking Ms. Angwin to participate in its Expert Review tool, Ms. Angwin learned that Grammarly had appropriated her name and identity when she read a report by another journalist who discovered that he, Ms. Angwin, and many other reporters had been involuntarily conscripted into serving as unpaid experts for Grammarly's for-profit app without their consent. *See* Casey Newton, *Grammarly turned me into an AI editor against my will and I hate it*, Platformer (Mar. 9, 2026), https://www.platformer.news/grammarly-expert-review-reviewed/.

24.    Ms. Angwin was shocked and horrified that Grammarly had been appropriating her name and identity to provide comments and feedback to Grammarly's users for profit without her consent, consultation, or input. She was not only concerned that Grammarly's use of her name and identity violated her privacy, but she was also concerned that this practice prevented her from controlling the commercial use of her name and identity and the work product the public associates with her name and identity. Ms. Angwin has spent decades building a strong reputation as an investigative journalist, writer, and editor, and was dismayed to see a commercial enterprise using her name and identity for profit without her consent and causing Grammarly's users to think that Ms. Angwin was giving them feedback and comments in which she had no role.

25.    For example, a Grammarly user could become displeased with Ms. Angwin if they did not agree with her writing advice or received a negative result after taking that advice (such as a bad grade in school or a negative performance evaluation at work), even though Ms. Angwin had absolutely nothing to do with the advice that she purportedly gave.

## C.    California and New York Law Bar Companies From Using the Name and Identities of Persons for Commercial Purposes Without Their Consent.

26.    When launching Grammarly's Expert Review, Superhuman apparently failed to consider that both California and New York prohibit companies from appropriating the name or identities of persons for commercial purposes without their consent.

27.    For more than 50 years, California law has recognized a person's right of publicity as a privacy right. In 1971, the California legislature enacted Civil Code § 3344 that gives every person the right to not have their name, photograph, or likeness used to advertise or sell products or services without that person's prior consent. In 1979, the California Supreme Court recognized a common law right of publicity that Civil Code § 3344 was intended to complement. As the California Supreme Court explained, the "right of publicity means in essence that the reaction of

the public to name and likeness, which may be fortuitous or which may be managed or planned, endows the name and likeness of the person involved with commercially exploitable opportunities. The protection of name and likeness from unwarranted intrusion or exploitation is the heart of the law of privacy." *Lugosi v. Universal Pictures*, 25 Cal. 3d 813, 824 (Cal. 1979).

28.    In 1909, the New York legislature enacted Section 50 of the New York State Civil Rights Law. In its current form, Section 50 provides that "A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait, picture, likeness, or voice of any living person without having first obtained the written consent of such person, or if a minor of such minor's parent or guardian, is guilty of a misdemeanor." As the New York Court of Appeals has explained, Section 50 was intended to prohibit "nonconsensual commercial appropriations of the name, portrait or picture of a living person" "for advertising purposes or for the purposes of trade'". *Finger v. Omni Publications Int'l, Ltd.*, 77 N.Y.2d 138, 141 (N.Y. 1990).

### D. Superhuman Violated the Common Law and Statutory Rights of Publicity of Ms. Angwin and the Other "Experts"

29.    By using the names and identities of Ms. Angwin and many other journalists, authors, editors, and others through the Expert Review tool, Superhuman violated their common law right of publicity under California law and the statutory right of publicity under California and New York law.

30.    *Before* Superhuman used the name and identity of Ms. Angwin and other "experts" as part of Grammarly's Expert Review tool to advance Superhuman's commercial purposes, Superhuman was required by California and New York law to obtain the consent of Ms. Angwin and the other "experts." But Superhuman failed to even request their consent, let alone obtain it. Accordingly Superhuman violated California and New York law when Superhuman appropriated the names of Ms. Angwin and other experts for commercial gain.

31.     In addition, Superhuman unjustly enriched itself by earning revenue and profit from the appropriation of Ms. Angwin's and other experts' names and identities and by failing to provide any compensation to them for the use of their names and identities.

### E. Ms. Angwin and Other Journalists and Authors Have Been Harmed by Superhuman's Violations of Their Privacy and Publicity Rights.

32.     Ms. Angwin and other journalists, authors, and editors have been injured by Superhuman's violations of California and New York Law.

33.     Superhuman's conduct has caused Ms. Angwin and other journalists, authors, and editors to lose control of the commercial use of their names and identities and the work product that the public associates with them.

34.     In addition, Ms. Angwin and other journalists, authors, and editors have suffered economic injury because they were not compensated for the use of their name and identities.

### CLASS ACTION ALLEGATIONS

35.     The named Plaintiff brings this action as a proposed class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class: "all persons in the United States who had their names used for Expert Review on any platform owned or operated by Superhuman, including Grammarly Enterprise, Grammarly Business, Grammarly for Education, Superhuman Go, Grammarly's AI writing surface, through the date of judgment in this action, and did not consent to such use."

36.     The named Plaintiff brings this action as a proposed class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Subclass: "all persons who resided in New York State who had their names used for Expert Review on any platform owned or operated by Superhuman, including Grammarly Enterprise, Grammarly Business, Grammarly for

Education, Superhuman Go, Grammarly's AI writing surface, through the date of judgment in this action, and did not consent to such use."

**Rule 23(a) is satisfied.**

37.     The Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, there are at least hundreds of people who are members of the proposed Class.

38.     There are at least several questions of law and fact common to all Class Members, including:

      a.     Whether Superhuman used the names of the Class Members for advertising purposes or for the purposes of trade, without having first obtained the written consent of the Class Members?

      b.     Whether Superhuman engaged in unauthorized appropriation of the Class Members' identities for commercial gain or advantage?

      c.     Whether the Class Members received no compensation for Superhuman's use of their identities?

      d.     Whether Superhuman's use of the "Experts'" names to give writing advice they did not provide violated New York Civil Rights Law § 50?

      e.     Whether Superhuman's use of the "Experts'" names to give writing advice they did not provide violated the common law right to publicity and/or misappropriation of likeness under California law?

      f.     Whether Superhuman was unjustly enriched at the expense of the Class Members?

39.    The Plaintiff's claims are typical of the claims of the Class she seeks to represent, because during the relevant period Plaintiff and the Class Members all had their names used by Superhuman in its Expert Review on Grammarly and Superhuman platforms, they did not consent to their names being used by Superhuman, and they were harmed by such use.

40.    In addition, the Plaintiff brings the same claims for violation of common law and statutory rights against misappropriation of a person's name and for unjust enrichment based on the same legal theory as the other Class Members.

41.    Both the Plaintiff and her counsel will fairly and adequately represent the Class. There is no antagonism between the interests of the Plaintiff and those of the Class Members. There is no conflict between the Plaintiff's claims and the claims of the Class Members. The Plaintiff has retained counsel skilled and experienced in complex class actions who will vigorously prosecute this litigation.

**Rule 23(b)(3) certification is appropriate.**

42.    Class certification is appropriate for the proposed Class under Rule 23(b)(3). The common questions of fact and law, described above, predominate over any questions affecting only individual Class Members, including whether Superhuman violated and continues to violate the publicity rights of Plaintiff and the Class Members.

43.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. First, the Class Members do not have an interest in individually controlling the prosecution of separate actions, because their individual damages may not be large enough to warrant pursuing individual litigation in court or to obtain counsel to pursue an individual action, and because the cost of litigating the action may far exceed any potential benefit for individual Class Members.

44.     The prosecution of separate actions by individual Class Members would also impose heavy burdens on the courts and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the proposed Class, including the key legal question of whether Superhuman has misappropriated the names of the Class Members. A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure the uniformity of decision with respect to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

45.     Second, the Plaintiff and her counsel are  not aware of any other litigation by the Class Members against Superhuman regarding the practices challenged in this action.

46.     Third, it is desirable to concentrate the litigation of the claims in this forum, because venue is proper in this District.

47.     There will be no difficulty managing this action as a class action.

**FIRST CLAIM FOR RELIEF**
**Violation of California's Common Law Right to**
**Publicity/Misappropriation of Likeness**
**On Behalf of Plaintiff and the Proposed Class**

48.     The Plaintiff, on behalf of herself and the Class Members, incorporates by reference all preceding paragraphs.

49.     Under California's common law, a right of publicity protects persons from the unauthorized appropriation of their identity by another person for commercial gain.

50.     A claim for violation of the right of publicity is established by (1) the defendant's use of the plaintiff's identity; (2) appropriation of the plaintiff's name or likeness to the defendant's advantage; (3) a lack of consent; and (4) injury to the plaintiff.

51.    As described above, Defendant Superhuman has used the names and identities of Plaintiff and the Class Members through its Expert Review tool and thereby used their names to Superhuman's commercial advantage.

52.    Plaintiff and the Class Members did not consent to such use.

53.    Plaintiff and the Class Members have been injured by the misappropriation of their names and identities in Expert Review, including by violating their privacy, preventing them from retaining control over the commercial use of their identities, associating work product with the "Experts" even though the "Experts" had no knowledge or control over the quality of the work, and causing them economic injury by not compensating them for the use of their names.

54.    Upon information and belief, Defendant Superhuman's conduct that violated Plaintiff's common law right to publicity took place primarily at Superhuman's headquarters in California, where Superhuman collected information on Plaintiff and the Class Members, built the Expert Review tool that misappropriated the names of Plaintiff and the Class Members, and disseminated the Expert Review tool from California to users throughout the United States.

55.    Plaintiff and the Class Members are entitled to compensatory damages, restitution, declaratory relief, and injunctive relief.

## SECOND CLAIM FOR RELIEF
### Violation of the California Civil Code § 3344
### On Behalf of Plaintiff and the Proposed Class

56.    The Plaintiff, on behalf of herself and the Class Members, incorporates by reference all preceding paragraphs.

57.    California Civil Code § 3344(a)(1) provides that "Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods, or services, without that person's prior consent, or, in the case of a minor, the

prior consent of their parent or legal guardian, shall be liable for any damages sustained by the person or persons injured as a result thereof."

58.    As described above, Defendant Superhuman has knowingly used and continues to use the names of the Plaintiff and Class Members for the purposes of selling access to its Expert Review tool and for the purpose of selling products linked to its Expert Review tool. Defendant Superhuman's use of the Plaintiff's and Class Members' names and identities is central to the Expert Review tool and to these products.

59.    Plaintiff and the Class Members did not consent to such use.

60.    Plaintiff and the Class Members have been injured by the misappropriation of their names in Expert Review, including by violating their privacy, preventing them from retaining control over the commercial use of their identities, associating work product with the "Experts" even though the "Experts" had no knowledge or control over the quality of the work, and causing them economic injury by not compensating them for the use of their names.

61.    Plaintiff and the Class Members are entitled to compensatory damages, restitution, declaratory relief, and injunctive relief.

### THIRD CLAIM FOR RELIEF
### Violation of the New York Civil Rights Law §§ 50 & 51
### On Behalf of Plaintiff and the Proposed Class

62.    The Plaintiff, on behalf of herself and the Class Members, incorporates by reference all preceding paragraphs.

63.    Defendant has engaged in a pattern or practice of violating Section 50 and Section 51 of the New York Civil Rights Law.

64.    Section 50 of the New York Civil Rights Law provides that "A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait,

picture, likeness, or voice of any living person without having first obtained the written consent of such person, or if a minor of such minor's parent or guardian, is guilty of a misdemeanor."

65.     Section 51 of the New York Civil Rights Law states that "Any person whose name, portrait, picture, likeness or voice is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as above provided may maintain an equitable action in the supreme court of this state against the person, firm or corporation so using such person's name, portrait, picture, likeness or voice, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person's name, portrait, picture, likeness or voice in such manner as is forbidden or declared to be unlawful by section fifty of this article, the jury, in its discretion, may award exemplary damages."

66.     As described above, Superhuman has used Plaintiff's name and the names of the Class Members within the State of New York for the purposes of advertising or trade without the consent of the Plaintiffs and other Class Members.

67.     As described above, every time that Superhuman deployed the Expert Review tool in the State of New York, Superhuman used the names of Plaintiffs and the other Class Members for the purposes of advertising or trade without their consent in violation of New York Civil Rights Law § 50. Defendant Superhuman has used Plaintiff's and the Class Members' names for the purpose of making revenue and profit.

68.     Accordingly, Superhuman has violated the rights of Plaintiffs and the Class Members under New York Civil Rights Law § 50.

69.     Plaintiff and the Class Members have been injured by the misappropriation of their names in Expert Review, including by violating their privacy, preventing them from retaining control over the commercial use of their identities, associating work product with the "Experts"

even though the "Experts" had no knowledge or control over the quality of the work, and causing them economic injury by not compensating them for the use of their names.

70.     Plaintiff and members of the proposed Class have suffered actual damages as a result of Defendant's violations of New York Civil Rights Law § 50, and are entitled to damages provided by New York Civil Rights Law § 51.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**On Behalf of Plaintiff and the Proposed Class**
**(In the Alternative to the Prior Counts)**

71.     The Plaintiff, on behalf of herself and the Class Members, incorporates by reference all preceding paragraphs.

72.     A plaintiff has a claim for unjust enrichment when the defendant was enriched at the plaintiff's expense, and it is against equity and good conscience to permit the defendant to retain what is sought to be recovered.

73.      Defendant Superhuman has been unjustly enriched at the expense of Plaintiff and the Class Members, and the company has unjustly retained the benefits of its unlawful and wrongful conduct.

74.     In particular, upon information and belief, Defendant Superhuman earned millions of dollars in revenue and profit selling paid subscriptions that included the Expert Review tool that misappropriated the names of Plaintiff and the Class Members. But Defendant Superhuman did not obtain the consent of Plaintiff and the Class Members or pay compensation to them for using their names in Superhuman's commercial products.

75.     It would be inequitable, unjust, and against good conscience for Defendant Superhuman to be permitted to retain any of the unlawful proceeds resulting from its unlawful and wrongful conduct.

76.     The Plaintiff and Class Members accordingly are entitled to equitable relief, including restitution and disgorgement of all revenues, earnings, and profits that Defendant Superhuman obtained as a result of its unlawful and wrongful conduct.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff and the Class Members pray for relief as follows:

(i)     A declaratory judgment that Defendant has violated the Plaintiffs' statutory and common law rights;

(ii)    A preliminary and permanent injunction against Defendant requiring it to comply with California and New York law;

(iii)   Certification of the case as a class action under Fed. R. Civ. P. 23(a) and (b)(3);

(iv)    Designation of the Plaintiff as the representative of the Class;

(v)     Designation of Plaintiff's counsel as Class Counsel;

(vi)    An order forbidding Defendant from engaging in further violations of California and New York law;

(vii)   An award of actual, real, and/or statutory damages for Defendant's violations;

(viii)  Reasonable attorneys' fees and costs incurred herein to the extent allowable by law;

(ix)    Pre- and post-judgment interest, as provided by law; and

(x)     Such other and further legal and equitable relief, including nominal damages, as this Court deems necessary, just, and proper.

## JURY DEMAND

The Plaintiff demands a jury trial.

Dated: March 11, 2026                    Respectfully submitted,

                                         PETER ROMER-FRIEDMAN LAW PLLC

                                         By: */s/ Peter Romer-Friedman*
                                         Peter Romer-Friedman
                                         Peter Romer-Friedman Law PLLC
                                         1629 K Street NW

Suite 300
Washington, DC 20006
Tel.: (202) 355-6364
Email: peter@prf-law.com

David Berman
Peter Romer-Friedman Law PLLC
16 Court Street
Fl. 33
Brooklyn, NY 11241
Tel.: 347-229-1514
Email: berman@prf-law.com