**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JULIA ANGWIN, on behalf of herself and all others similarly situated,

*Plaintiffs*,

v.

SUPERHUMAN PLATFORM INC.,

*Defendant*.

Case No. 1:26-cv-02005-JGK

# DEFENDANT SUPERHUMAN PLATFORM INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION, ENFORCE THE CLASS ACTION WAIVER, AND STAY ALL PROCEEDINGS

Dated: June 15, 2026

ARNOLD & PORTER KAYE SCHOLER LLP

Dori Ann Hanswirth
Theresa M. House
250 W. 55th St.
New York, NY 10019
(212) 836-8000
Dori.Hanswirth@arnoldporter.com
Theresa.House@arnoldporter.com

Daniel E. Raymond
300 N. LaSalle Dr.
Chicago, IL 60654
(312) 583-2300
Daniel.Raymond@arnoldporter.com

*Attorneys for Defendant Superhuman Platform Inc.*

# TABLE OF CONTENTS


I. PRELIMINARY STATEMENT ........ 1

II. BACKGROUND ........ 2

A. Superhuman and Grammarly. ........ 2

B. Plaintiff Agreed to Grammarly's Terms of Service. ........ 3

C. The Arbitration Provision. ........ 7

D. The Class Action Waiver. ........ 8

E. Plaintiff's Claims in This Action. ........ 8

III. LEGAL STANDARD ........ 9

IV. ARGUMENT ........ 10

A. Plaintiff Entered into a Binding Agreement to Arbitrate Her Claims. ........ 11

1. Grammarly's notice of the Terms of Service, containing the Arbitration Provision and class action waiver, was reasonably conspicuous. ........ 12

2. Plaintiff's manifestation of assent to the Arbitration Provision and class action waiver was unambiguous. ........ 14

B. The Arbitration Provision Clearly and Unmistakably Delegates Scope to the Arbitrator, but in Any Event, Plaintiff's Claims Fall Squarely Within Its Scope. ........ 15

1. The Arbitration Provision assigns questions of arbitrability, including scope, to the arbitrator. ........ 16

2. Plaintiff's claims fall within the scope of the Arbitration Provision. ........ 18

C. The Court Should Enforce the Class Action Waiver. ........ 20

D. The Court Should Stay This Action Pending Arbitration. ........ 21

V. CONCLUSION ........ 22

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Applebaum v. Lyft, Inc.*,
263 F. Supp. 3d 454 (S.D.N.Y. 2017) (Koeltl, J.) .......... 16, 22

*Associated Brick Mason Contractors of Greater N.Y., Inc. v. Harrington*,
820 F.2d 31 (2d Cir. 1987).......... 18

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011).......... 9, 10, 21

*Berkson v. Gogo LLC*,
97 F. Supp. 3d 359 (E.D.N.Y. 2015) .......... 15

*Camilo v. Uber Techs., Inc.*,
No. 17 CIV. 9508 (AKH), 2018 WL 2464507 (S.D.N.Y. May 31, 2018) .......... 21

*Contec Corp. v. Remote Sol., Co.*,
398 F.3d 205 (2d Cir. 2005).......... 18

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985).......... 1

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018).......... 20

*Feld v. Postmates, Inc.*,
442 F. Supp. 3d 825 (S.D.N.Y. 2020).......... 13

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995).......... 10, 11, 16

*Flores v. Chime Fin., Inc.*,
No. 21-CV-4735, 2022 WL 873252 (S.D.N.Y. Mar. 23, 2022) .......... 11

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012).......... 15

*Gould v. Hyundai Motor Co.*,
No. 8:23-CV-01344-JWH-DFM, 2025 WL 26806 (C.D. Cal. Jan. 3, 2025) .......... 19

*Guerriero v. Sony Elecs. Inc.*,
No. 21 CV 2618 (VB), 2022 WL 736428 (S.D.N.Y. Mar. 11, 2022) .......... 21

*Hartford Acc. & Indem. Co. v. Swiss Reins. Am. Corp.*,
246 F.3d 219 (2d Cir. 2001).......... 10, 15

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) ........ 16

*Hidalgo v. Amateur Athletic Union of U.S., Inc.*,
468 F. Supp. 3d 646 (S.D.N.Y. 2020) (Koeltl, J.) ........ 13, 17, 18, 22

*Hines v. Overstock.com*,
380 F. App'x 22 (2d Cir. 2010) ........ 9

*Horton v. Dow Jones & Co.*,
804 F. App'x 81 (2d Cir. 2020) ........ 21

*Katz v. Cellco P'ship*,
794 F.3d 341 (2d Cir. 2015) ........ 22

*KPMG LLP v. Cocchi*,
565 U.S. 18 (2011) ........ 9

*Kuehn v. Citibank, N.A.*,
No. 12-CV-3287, 2012 WL 6057941 (S.D.N.Y. Dec. 6, 2012) ........ 17

*Lamps Plus, Inc. v. Varela*,
587 U.S. 176 (2019) ........ 21

*Lee v. Ticketmaster L.L.C.*,
817 F. App'x 393 (9th Cir. 2020) ........ 11

*Manigault v. Macy's E., LLC*,
318 F. App'x 6 (2d Cir. 2009) ........ 11

*Mey v. DIRECTV, LLC*,
971 F.3d 284 (4th Cir. 2020) ........ 20

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) ........ passim

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) ........ 9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ........ 10

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016) ........ 10

*Olsen v. Charter Commc'ns, Inc.*,
No. 18CV3388 (JGK), 2019 WL 3779190 (S.D.N.Y. Aug. 9, 2019) (Koeltl, J.) ........ 17

*Pabon v. HRB Digital LLC*,
No. 23-CV-5363, 2025 WL 2254008 (E.D.N.Y. Aug. 7, 2025) ............................................ 19

*PaineWebber Inc. v. Bybyk*,
81 F.3d 1193 (2d Cir. 1996)................................................................................................ 16

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
369 F.3d 645 (2d Cir. 2004)................................................................................................ 19

*Parisi v. Goldman, Sachs & Co.*,
710 F.3d 483 (2d Cir. 2013)................................................................................................ 21

*Register.com, Inc. v. Verio, Inc.*,
356 F.3d 393 (2d Cir. 2004)................................................................................................ 14

*Sacchi v. Verizon Online LLC*,
No. 14-CV-423-RA, 2015 WL 765940 (S.D.N.Y. Feb. 23, 2015)........................................ 21

*Schnabel v. Trilegiant Corp.*,
697 F.3d 110 (2d Cir. 2012).............................................................................................. 9, 12

*Selden v. Airbnb, Inc.*,
No. 16-CV-00933 (CRC), 2016 WL 6476934 (D.D.C. Nov. 1, 2016)............................. 14, 15

*Shetiwy v. Midland Credit Mgmt.*,
959 F. Supp. 2d 469 (S.D.N.Y. 2013).................................................................................. 21

*Sinavsky v. NBCUniversal Media, LLC*,
No. 20-CV-9175, 2021 WL 4151013 (S.D.N.Y. Sept. 13, 2021)........................................... 17

*Sollinger v. SmileDirectClub, LLC*,
No. 19-cv-5977, 2020 WL 774135 (S.D.N.Y. Feb. 18, 2020) ............................................... 18

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010)........................................................................................................... 2, 21

*Sutherland v. Ernst & Young LLP*,
726 F.3d 290 (2d Cir. 2013)................................................................................................ 21

*Tomlin v. Roblox Corp.*,
No. CV 25-4301, 2026 WL 1412606 (E.D. Pa. May 20, 2026) ............................................ 20

*United States v. Gonzales*,
520 U.S. 1 (1997)................................................................................................................. 18

*Washington v. William Morris Endeavor Ent., LLC*,
No. 10-CV-9647, 2011 WL 3251504 (S.D.N.Y. July 20, 2011)............................................ 17

*Worthington v. JetSmarter, Inc.*,
No. 18-CV-12113, 2019 WL 4933635 (S.D.N.Y. Oct. 7, 2019) ........ 17

**Statutes**

9 U.S.C. §§ 1-16 ........ 1

9 U.S.C. § 2 ........ 9

9 U.S.C. § 3 ........ 1, 22

9 U.S.C. § 4 ........ 1

**Other Authorities & Sources**

Rule 7 of the AAA Commercial Arbitration Rules ........ 17

Black's Law Dictionary (12th ed. 2024) ........ 19

*Grand Theft Grammarly w/ Julia Angwin & Peter Romer-Friedman*, Computer Says Maybe (Mar. 24, 2026), https://podscan.fm/podcasts/computer-says-maybe/episodes/short-grand-theft-grammarly-w-julia-angwin-amp-peter-romer-friedman ........ 4

Defendant Superhuman Platform Inc. ("Superhuman") moves pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, to compel arbitration of the claims of Plaintiff Julia Angwin ("Plaintiff"), enforce a class action waiver, dismiss her class claims, and stay this action pending arbitration.

## I. PRELIMINARY STATEMENT

The FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4). Plaintiff's claims are subject to such an agreement as well as a class action waiver. Accordingly, the Court should compel arbitration, dismiss her class claims, and stay or dismiss the case pending arbitration.

In September 2024, Plaintiff signed up for the Grammarly writing assistant, a well-known AI-powered program owned and operated by Superhuman. The Grammarly writing assistant serves 40 million people daily and is embedded across thousands of writing surfaces via website and desktop applications. Plaintiff created a free account on the Grammarly website using her name, "Julia Angwin," and her professional email address, and, in doing so, accepted Grammarly's terms of service. In accepting those terms, Plaintiff agreed to resolve any disputes "relating to" Grammarly's "products" individually and in arbitration.

On March 11, 2026, Plaintiff filed this putative class action asserting claims arising out of Grammarly's Expert Review feature. But this lawsuit should not proceed. The Grammarly writing assistant is a "product[]" within the meaning of the terms of service, Expert Review is a feature that was embedded in that product, and Plaintiff's claims plainly "relat[e] to" that product and its operation. Plaintiff alleges that the Expert Review feature generated and presented writing suggestions by experts without their consent—and that alleged conduct underlies every claim in her complaint. *See, e.g.*, ECF No. 1 ("Compl.") ¶¶ 16-22.

Although Plaintiff's claims fall comfortably within the scope of the parties' agreement, the Court need not resolve that question in order to compel arbitration. The parties clearly and unmistakably delegated questions concerning "interpretation," "application," "enforceability," "revocability," or "validity" of the arbitration provision to the arbitrator. Thus, once the Court determines that Plaintiff entered into a valid arbitration agreement (as she did), the Court should compel her to arbitrate her claims, including any dispute concerning the scope or applicability of that agreement.

The agreement also independently forecloses Plaintiff's effort to proceed as a class action. Absent an affirmative contractual basis, parties may not be compelled to arbitrate class claims. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010). Here, the agreement requires individualized proceedings and prohibits class arbitrations.

In sum, Plaintiff agreed to resolve disputes relating to Grammarly's products through individualized arbitration. The Court should enforce that agreement as written, compel arbitration, and dismiss or stay this action.

## II. <u>BACKGROUND</u>

### A. Superhuman and Grammarly.

Superhuman Platform Inc., formerly known as Grammarly, Inc. ("Grammarly"), is an innovative technology company that develops and provides a variety of free and subscription-based products. Declaration of Jakub Kepczynski ("Kepczynski Decl.") ¶ 4. When Plaintiff

entered into the arbitration agreement at issue here, Superhuman was widely known as Grammarly. *See id.* ¶ 1. In November 2025, Grammarly rebranded as Superhuman. *Id.*[1]

Superhuman's offerings include, among other things, an intelligent email client, as well as AI-driven writing and productivity tools delivered through web-based and application-based platforms. *Id.* ¶ 4. One of Superhuman's products is the Grammarly writing assistant—an AI-powered tool that reviews and provides suggestions regarding grammar, spelling, tone, and style of the user's writing samples. *Id.* The Grammarly writing assistant is available through a website, through mobile and desktop applications, and through a web browser extension. *Id.* Users can access the Grammarly writing assistant and other products only after completing the registration process and agreeing to the applicable Terms of Service.[2] *Id.* ¶ 5.

**B. Plaintiff Agreed to Grammarly's Terms of Service.**

On September 25, 2024, Plaintiff signed up for the Grammarly writing assistant by creating a free account on the Grammarly website. Kepczynski Decl. ¶ 8, Ex. A. Plaintiff used her name ("Julia Angwin") and her email address to register. *Id.* Plaintiff's counsel confirmed that Plaintiff "uses" the email address in question. *See* Ex. 1 to Declaration of Daniel E. Raymond ("Raymond Decl."). Superhuman's records also confirm that Plaintiff used the Grammarly writing assistant account at least 18 times. Kepczynski Decl. ¶ 16, Ex. B. And Plaintiff herself acknowledged in a

---

[1] When discussing events occurring before the November 2025 rebrand, including Plaintiff's sign-up process for the writing assistant product, this memorandum refers to Superhuman as "Grammarly."

[2] "Terms of Service," "Terms and Conditions," or "Terms" are used interchangeably in this memorandum. As explained below, the hyperlinks on the Grammarly website direct users to the same document regardless of its title. *See* Kepczynski Decl. ¶ 5 n. 1, ¶ 13 n. 4.

podcast that she had "used [the Grammarly writing assistant] before … maybe the free version back a million years ago," even though, in her words, she "ha[dn't] been a big Grammarly user." *Grand Theft Grammarly w/ Julia Angwin & Peter Romer-Friedman*, Computer Says Maybe, at 08:50-09:30 (Mar. 24, 2026), https://podscan.fm/podcasts/computer-says-maybe/episodes/short-grand-theft-grammarly-w-julia-angwin-amp-peter-romer-friedman; Raymond Decl. ¶ 6. Accordingly, Plaintiff agreed to the Terms of Service containing the arbitration provisions (the "Arbitration Provision") and a class action waiver as part of the registration process and during each subsequent sign-in session. Kepczynski Decl. ¶¶ 14, 16, 18, 20-26.

In all material and relevant respects, the content and structure of the account creation and sign-in process using the Grammarly website are materially the same now as they were on September 25, 2024 (when Plaintiff created her account). *See id.* ¶ 10. The process to create a registered account on the Grammarly website required Plaintiff to go to https://www.grammarly.com/ and click on one of the two sign-up buttons—"**Sign up** It's free" or "Sign up with Google"—as shown on *Figure 1* below. *Id.* ¶ 11. The background of the website is white, and the text is gray. *Id.* The website displayed the hyperlinked Terms and Conditions in green font that were featured directly below the sign-up buttons. *Id.* The statement directly below the sign-up buttons also notified Plaintiff that "[b]y signing up, [Plaintiff] agree[d] to the Terms and Conditions and Privacy Policy." *Id.* The hyperlinked Terms and Conditions incorporated the Arbitration Provision, as described in more detail below. *Id.*

*Figure 1*




Once Plaintiff clicked on the "**Sign up** It's free" button, she would be directed to another interactive pop-up window (see *Figure 2* below) that provided three options for signing up: (1) "Continue with Google," (2) "Continue with Apple," or (3) an option to provide the user name, email address, and create a password. Kepczynski Decl. ¶ 12. For all three options, this pop-up window also displayed the hyperlinked Terms and Conditions in gray font right below the "Agree and Sign up" button, and notified Plaintiff that "[b]y signing up, [she] agree[d] to the Terms and Conditions and Privacy Policy." *Id.* The hyperlinked Terms incorporate the Arbitration Provision, as described in more detail below. *Id.*

[*Continued on the next page*]

*Figure 2*




Plaintiff signed up for the Grammarly writing assistant account using her Google account. Kepczynski Decl. ¶ 15, Ex. A. Plaintiff was notified that by signing up through her Google account, she agreed to the hyperlinked Terms of Service. *See id.* ¶¶ 11-13. Plaintiff was also given an opportunity to review the Terms when she entered her Google account information before finalizing her registration. *Id.* ¶ 13. The Terms were also displayed whenever Plaintiff signed into her account. *Id.* ¶ 14. Plaintiff signed into her Grammarly account at least 18 times. *Id.* ¶ 16, Ex. B.

### C. The Arbitration Provision.

Users who click on the "Terms and Conditions" hyperlink are directed to a separate screen titled "Terms of Service," which contains a scrollable version of the Terms, including the Arbitration Provision. Kepczynski Decl. ¶ 17. When Plaintiff signed up for her account on September 25, 2024, she agreed to Grammarly's then-current Terms of Service. *Id.* ¶ 18. The Terms of Service contained a mandatory Arbitration Provision. *Id.*

The Arbitration Provision provides that all disputes between Plaintiff and Grammarly related to Grammarly's products must be resolved through mandatory arbitration. *Id.* ¶ 22. Specifically, the Arbitration Provision states:

> **IF YOU'RE A U.S. RESIDENT, YOU ALSO AGREE TO THE FOLLOWING MANDATORY ARBITRATION PROVISIONS:**
>
> *We both agree to arbitrate.* You and Grammarly agree to resolve ***any claims relating to these terms or our products*** through final and binding arbitration by a single arbitrator, except as set forth under "Exceptions to agreement to arbitrate" below. This includes disputes arising out of or relating to interpretation or application of this "Mandatory Arbitration Provisions" section, including its enforceability, revocability, or validity.

*Id.* ¶ 22, Ex. C (first emphasis in original; second emphasis added).

The Terms of Service define "products" as "all of our [Grammarly's] products and services, including our apps, websites, and software." *Id.* ¶ 17, Ex. C. But before Plaintiff could even commence any claim, she was required to engage in certain pre-dispute procedures. Specifically, the Terms of Service provide: "Before filing a claim against Grammarly, you agree to try to resolve the dispute informally by contacting support@grammarly.com … If you and we cannot resolve the dispute informally, then a party seeking to bring a formal proceeding must first send to the other, by certified mail, a written Notice of Dispute," setting forth the nature of the claim and the relief sought. *Id.* ¶ 19, Ex. C. "If Grammarly and you do not resolve the claim within sixty (60) calendar days after receiving the Notice, you or Grammarly may commence a formal

proceeding." *Id.* Superhuman's records confirm that Plaintiff did not engage in these pre-dispute procedures. *Id.* ¶ 20.

The Arbitration Provision is governed by California law. *Id.* ¶ 21, Ex. C. The Arbitration Provision also provides that arbitration shall be conducted by the American Arbitration Association under its Commercial Arbitration Rules. *Id.* ¶ 23, Ex. C. The Arbitration Provision also contains an opt-out provision, which states the following:

> Opt-out of agreement to arbitrate. You have the right to opt out of these arbitration provisions (and any future changes to arbitration provisions) by emailing arbitration-opt-out@grammarly.com within 30 days of agreeing to a version of these terms containing arbitration terms (however, if you agreed to a previous version of these terms of service that contain an arbitration provision, you are still bound by those arbitration provisions).

*Id.* ¶ 24, Ex. C.

Plaintiff did not opt out of the Arbitration Provision. *Id.* ¶ 25.

### D. The Class Action Waiver.

The agreement also contains a class action waiver, which states the following:

> ***NO CLASS ACTIONS.*** You may only resolve disputes with us individually. That is, you may not bring a claim as a plaintiff or a class member in a class, consolidated, or representative action. Class arbitrations, class actions, private attorney general actions, and consolidation with other arbitrations aren't allowed.

*Id.* ¶ 26, Ex. C (emphasis in original).

### E. Plaintiff's Claims in This Action.

On March 11, 2026, Plaintiff filed her putative class action about Grammarly's Expert Review feature—an agent embedded in the Grammarly "product[]" within the meaning of the Terms. *See* Compl. ¶¶ 1-2; Kepczynski Decl. ¶¶ 4, 7, 17. The Expert Review was available to free and subscription-based Grammarly user accounts between August 2025 and March 2026 and is currently disabled. Kepczynski Decl. ¶ 4.

Plaintiff alleges that the Expert Review allowed users to submit text and receive writing suggestions and comments generated by Grammarly and attributed to identified "experts," including journalists, authors, and other professionals. *See, e.g.*, Compl. ¶¶ 16, 22. According to the Complaint, the feature analyzed user-submitted text, identified relevant "experts," and presented feedback alongside the user's writing samples, including statements that Grammarly was "[a]pplying ideas from" those individuals and that it provided suggestions "inspired" by them. *Id.* ¶¶ 17-19. Plaintiff alleges that Superhuman used her name and the names of others in connection with that functionality without consent. *Id.* ¶ 21. Based on these allegations, Plaintiff asserts claims for violation of New York and California privacy and publicity laws and unjust enrichment on behalf of herself and a putative class. *Id.* ¶¶ 48-76.

## III. LEGAL STANDARD

Congress enacted the FAA to reverse longstanding judicial hostility to arbitration agreements and to place them on an equal footing with other contracts. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The Supreme Court has repeatedly emphasized that courts are required to enforce arbitration agreements as written because the FAA "reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'" *See, e.g.*, *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)). "[T]his policy is founded on a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, disputes." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012). Under the FAA, arbitration provisions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

A party seeking arbitration bears the initial burden of showing that an agreement to arbitrate existed. *Hines v. Overstock.com*, 380 F. App'x 22, 24 (2d Cir. 2010). The burden then shifts to the party resisting arbitration to show that the agreement is invalid. *Id.* Courts deciding

motions to compel arbitration may consider "all relevant, admissible evidence submitted by the parties," including affidavits. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (quotation marks omitted). When courts determine that the parties have agreed to arbitration, courts then stay the proceedings upon the party's request. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).

## IV. ARGUMENT

A court considering whether to compel arbitration proceeds in two steps: ***first***, the court must decide "whether there exists a valid agreement to arbitrate at all under the contract in question"; ***second***, if such an arbitration agreement exists, the court considers "whether the particular dispute sought to be arbitrated falls within [its] scope." *Hartford Acc. & Indem. Co. v. Swiss Reins. Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) (quotation marks omitted). The court does not need to proceed to the second step when the arbitration agreement submits the "arbitrability question itself" to the arbitrator, who is empowered to decide whether a particular dispute falls within the scope of the agreement. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Moreover, class waivers in particular must be enforced because "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Concepcion*, 563 U.S. at 344.

Each step is met here. Plaintiff agreed to arbitrate her claims with Grammarly on an individual basis. And although Plaintiff's claims fit comfortably within the scope of the Arbitration Provision because they "relate to" a feature of the Grammarly "product" (*i.e.*, the Expert Review feature, which is the subject of the instant action), the Court need not address the second step because the Arbitration Provision clearly and unmistakably delegates to the arbitrator the

determination of whether her claims fall within its scope. As such, the Court should compel arbitration and stay or dismiss the case pending arbitration.

**A. Plaintiff Entered into a Binding Agreement to Arbitrate Her Claims.**

The first step of the analysis is satisfied because an agreement to arbitrate exists. In the first step, courts apply "ordinary state-law principles that govern the formation of contracts." *First Options*, 514 U.S. at 944. Here, the Arbitration Provision is governed by California law (*see* Kepczynski Decl. ¶ 21, Ex. C), and Plaintiff, a New York resident, filed her lawsuit in New York (*see* Compl. ¶ 4). The Court does not need to decide whether New York or California law should apply to the formation question because both jurisdictions "apply substantially similar rules for determining whether the parties have mutually assented to a contract term." *Meyer*, 868 F.3d at 74 (quotation marks omitted) (applying California law but noting that New York law is substantially the same).

"Under New York law, in order for a contract to be binding, there must be a meeting of the minds and a manifestation of mutual assent." *Flores v. Chime Fin., Inc.*, No. 21-CV-4735, 2022 WL 873252, at *4 (S.D.N.Y. Mar. 23, 2022) (quotation marks omitted); *see also Manigault v. Macy's E., LLC*, 318 F. App'x 6, 8 (2d Cir. 2009) ("A contract may be formed by words or by conduct that demonstrate the parties' mutual assent."). So too under California law. *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394 (9th Cir. 2020) ("Courts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement.") (quotation marks omitted).

"Web based agreements have not fundamentally changed the principles of contract." *Flores*, 2022 WL 873252, at *4 (quotation marks omitted). And the Court of Appeals for the Second Circuit has held that an arbitration provision included in a web-based enrollment form, like the Arbitration Provision at issue here, may be enforceable under California law "where [1]

the notice of the arbitration provision was reasonably conspicuous and [2] manifestation of assent [was] unambiguous as a matter of law." *Meyer*, 868 F.3d at 76.

Here, for the reasons noted below, the Grammarly website's notice of the Terms was reasonably conspicuous, and Plaintiff unambiguously manifested her assent to be bound by the Arbitration Provision and class action waiver by agreeing to the Terms.

**1. Grammarly's notice of the Terms of Service, containing the Arbitration Provision and class action waiver, was reasonably conspicuous.**

Courts routinely find that websites similar to Grammarly's provide reasonably conspicuous notice of their terms of service to users. In *Meyer*, for example, the Court of Appeals for the Second Circuit concluded that the Uber online registration form provided conspicuous notice to the plaintiff, as a matter of California law, where the registration screen was "uncluttered," there was a warning that "By creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY," "[t]he text [of that warning], including the hyperlinks to the Terms and Conditions and Privacy Policy, appear[ed] directly below the buttons for registration," "the hyperlinks [were] in blue and underlined," and "[t]he entire screen [was] visible at once, and the user d[id] not need to scroll beyond what [was] immediately visible to find notice of the Terms of Service." 868 F.3d at 78.

Moreover, because Uber's "notice of the Terms of Service [was] provided simultaneously to enrollment, thereby connecting the contractual terms to the service to which they apply … a reasonably prudent smartphone user would understand that the terms were connected to the creation of a user account." *Id.*; *see also Schnabel*, 697 F.3d at 124 ("[T]he touchstone of the analysis is whether reasonable people in the position of the parties would have known about the terms and the conduct that would be required to assent to them."). Finally, the fact that the

arbitration agreement was located with the hyperlinked terms of service was not a "barrier to reasonable notice." *Meyer*, 868 F.3d at 79.

Grammarly's website and the account creation process fit *Meyer*'s fact pattern perfectly. Here, just like in *Meyer*, Grammarly's website (which in all material respects is the same now as it was on September 25, 2024) is uncluttered. *See* Kepczynski Decl. ¶¶ 10-14. Both the welcome page (*Figure 1*) and the pop-up window (*Figure 2*) are displayed on a single screen, are user-friendly, and are easy to read. *See id.* ¶¶ 11-12. The welcome page had two sign-up buttons ("**Sign up** It's Free" or "Sign up with Google") and displayed the hyperlinked Terms and Conditions in green font directly below those buttons. *Id.* ¶ 11. The pop-up window (*Figure 2*) contained three options for signing up and displayed the hyperlinked Terms and Conditions directly below them. *Id.* ¶ 12. Both the welcome page and the pop-up page included a warning directly beneath the registration buttons, explicitly stating, "By signing up, you agree to the Terms and Conditions and Privacy Policy." *Id.* ¶¶ 11-12. These hyperlinked Terms direct users, like Plaintiff, to a scrollable version of the Terms of Service containing the Arbitration Provision and the class action waiver. *Id.* Moreover, when Plaintiff clicked the "Sign up with Google" (*Figure 1*) or "Continue with Google" (*Figure 2*) buttons (*see id.* ¶ 15), she was directed to a separate window and given an additional opportunity to review the hyperlinked Terms and Conditions displayed in blue before finalizing her registration (*id.* ¶ 13).

Accordingly, Grammarly's website provided Plaintiff with a conspicuous notice that she was bound by the Terms of Service, the Arbitration Provision, and the class action waiver. *See also Hidalgo v. Amateur Athletic Union of U.S., Inc.*, 468 F. Supp. 3d 646, 656-57 (S.D.N.Y. 2020) (Koeltl, J.) (similar website features provided reasonable notice); *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 831-32 (S.D.N.Y. 2020) (same).

### 2. Plaintiff's manifestation of assent to the Arbitration Provision and class action waiver was unambiguous.

Plaintiff unambiguously assented to Grammarly's Terms of Service, including the Arbitration Provision and the class action waiver. Plaintiff registered her Grammarly writing assistant account using her Google account. Kepczynski Decl. ¶ 15. This means that Plaintiff either clicked the "Sign up with Google" button on the welcome page (*Figure 1*) or the "Continue with Google" button on the pop-up page (*Figure 2*). *See id.* ¶¶ 11-12. Either way, the website clearly notified Plaintiff that "***[b]y signing up***, [she] agree[d] to the Terms and Conditions" containing the Arbitration Provision and the class action waiver. *Id.* (emphasis added). And she proceeded to manifest her assent by creating her account.

User assent does not need to be express; rather, assent must be unambiguous. *See Meyer*, 868 F.3d at 79. To demonstrate unambiguous assent, there must be evidence that the user "knew or should have known of the terms and understood that acceptance of the benefit would be construed by the offeror as an agreement to be bound." *Id.* (quotation marks omitted). Such user assent is regularly found in the context of websites like Grammarly's.

Grammarly's website presents a classic example of the "sign-up-wrap" (often referred to as "sign-in-wrap") agreement, meaning "a user signs up to use an internet product or service, and the signup screen states that acceptance of a separate agreement is required before the user can access the service." *Selden v. Airbnb, Inc.*, No. 16-CV-00933 (CRC), 2016 WL 6476934, at *4 (D.D.C. Nov. 1, 2016). "While a link to the separate agreement is provided, users are not required to indicate that they have read the agreement's terms before signing up." *Id.* Courts routinely find this type of agreement enforceable. *See Meyer*, 868 F.3d at 80 (although user did not need to click "I agree" button, "by creating an Uber account, the user was agreeing to be bound by the linked terms"); *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004) ("[R]egardless whether

[a user] did or did not say, 'I agree' … [the user's] choice was either to accept the offer of contract, taking the information subject to the terms of the offer, or, if the terms were not acceptable, to decline to take the benefits."); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835 (S.D.N.Y. 2012) (enforcing forum selection clause when Facebook user was informed, immediately below the Sign Up button, that "[b]y clicking Sign Up, you are indicating that you have read and agree to the Terms of Service"); *Selden*, 2016 WL 6476934, at *5 (by choosing to "Sign up with Facebook" for the Airbnb application, user "manifested his assent to the Terms of Service").

Moreover, courts often enforce "sign-up-wrap" agreements, like Grammarly's, where the user is presented with conspicuous hyperlinks to the terms of service during account creation and subsequent log-ins. *See Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 401 (E.D.N.Y. 2015). Furthermore, courts often rely on several indicia demonstrating assent in online "sign-up-wrap" agreements—all of which are present here. For instance, the hyperlinked Terms of Service appeared directly adjacent to the sign-up buttons (Kepczynski Decl. ¶¶ 11-13); Plaintiff was presented with the Terms on multiple successive screens (*id.*); and the Terms were displayed again during subsequent log-ins (*id.* ¶ 14). *See Berkson*, 97 F. Supp. 3d at 401.

Accordingly, Plaintiff unambiguously assented to Grammarly's Terms of Service by signing up for the Grammarly writing assistant account with her Google account.

### B. The Arbitration Provision Clearly and Unmistakably Delegates Scope to the Arbitrator, but in Any Event, Plaintiff's Claims Fall Squarely Within Its Scope.

Once the movant demonstrates that an agreement to arbitrate exists, the court then decides "whether the particular dispute sought to be arbitrated falls within the [its] scope." *Hartford Accident & Indem. Co.*, 246 F.3d at 226. But the court does not need to proceed to the second step,

where, as here, the arbitration agreement delegates the scope question to the arbitrator. *First Options*, 514 U.S. at 943-44.

**1. The Arbitration Provision assigns questions of arbitrability, including scope, to the arbitrator.**

The FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions," including "whether their arbitration agreement applies to the particular dispute." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). If an arbitration agreement contains "clear and unmistakable evidence" that the parties intended "the question of arbitrability [to] be decided by the arbitrator," then "the arbitrator, not the court, shall determine whether an issue is arbitrable." *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198-99 (2d Cir. 1996). The Arbitration Provision here contains clear and unmistakable evidence of delegation.

*First*, the Arbitration Provision unambiguously states: "You and Grammarly agree to resolve any claims relating to these terms or our products through final and binding arbitration … ***This includes disputes arising out of or relating to interpretation or application of this 'Mandatory Arbitration Provisions' section, including its enforceability, revocability, or validity***." Kepczynski Decl. ¶ 22, Ex. C (emphasis added). The Arbitration Provision therefore "clearly and unmistakably" delegates "interpretation or application"—*i.e.*, the question of the Arbitration Provision's scope—to the arbitrator.

This Court has routinely enforced similar clear and unmistakable delegation clauses. *See, e.g.*, *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 470 (S.D.N.Y. 2017) (Koeltl, J.) (finding delegation where terms stated "[a]ll disputes concerning the arbitrability of a Claim (including disputes about the scope, applicability, enforceability, or validity of the Arbitration Agreement) shall be decided by the arbitrator . . . ."); *Olsen v. Charter Commc'ns, Inc.*, No. 18CV3388 (JGK),

2019 WL 3779190, at *7 (S.D.N.Y. Aug. 9, 2019) (Koeltl, J.) (finding delegation where terms stated that "all issues are for the arbitrator to decide (including the scope of the arbitration clause)"); *Hidalgo*, 468 F. Supp. 3d at 660 (Koeltl, J.) (similar).

Courts throughout this District are in accord, consistently enforcing the same and similar delegation clauses. *See, e.g.*, *Sinavsky v. NBCUniversal Media, LLC*, No. 20-CV-9175, 2021 WL 4151013, at *5-6 (S.D.N.Y. Sept. 13, 2021) (arbitrator must decide arbitrability where agreement gave arbitrator "exclusive authority to resolve any dispute relating to the applicability, interpretation, formation, or enforceability of this Agreement") (quotation marks omitted); *Worthington v. JetSmarter, Inc.*, No. 18-CV-12113, 2019 WL 4933635, at *6-8 (S.D.N.Y. Oct. 7, 2019) (same where agreement gave arbitrator authority over "'[a]ny claim or dispute between the parties . . . including the validity of this clause'"); *Kuehn v. Citibank, N.A.*, No. 12-CV-3287, 2012 WL 6057941, at *4 (S.D.N.Y. Dec. 6, 2012) (same where agreement "provide[d] that '[c]laims relating to . . . application, enforceability or interpretation of my Account, including this arbitration provision' are subject to arbitration"); *Washington v. William Morris Endeavor Ent., LLC*, No. 10-CV-9647, 2011 WL 3251504, at *6 (S.D.N.Y. July 20, 2011) (same where agreement "expressly provide[d] that the arbitrator 'shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement'").

*Second*, the Arbitration Provision expressly incorporates the rules of the American Arbitration Association ("AAA"), Rule 7 of which provides that: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court." Ex. 2 to Raymond Decl. The Court of Appeals for the Second Circuit has held that where "parties explicitly incorporate rules that

empower an arbitrator to decide issues of arbitrability," such as "the AAA Commercial Arbitration Rules," "the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005); *see also Hidalgo*, 468 F. Supp. 3d at 661 n.6 (Koeltl, J.) ("[T]he incorporation of AAA rules in the arbitration provision constitutes independent 'clear and unmistakable' evidence that the parties intended that the arbitrator decide issues of arbitrability."); *Sollinger v. SmileDirectClub, LLC*, No. 19-cv-5977, 2020 WL 774135, at *3 (S.D.N.Y. Feb. 18, 2020) ("One example of 'clear and unmistakable evidence' is the parties' choice to 'incorporate by reference the Rules of the American Arbitration Association,' because the AAA's rules include an instruction that arbitrators are to determine their own jurisdiction.") (cleaned up).

Accordingly, this Court should compel arbitration and stay the proceedings without reaching the question of whether the Arbitration Provision covers Plaintiff's claims in this action.

**2. Plaintiff's claims fall within the scope of the Arbitration Provision.**

In any event, Plaintiff's claims fall squarely within the scope of the Arbitration Provision. The Arbitration Provision states: "You and Grammarly agree to resolve ***any claims relating to these terms or our products*** through final and binding arbitration." Kepczynski Decl. ¶ 22, Ex. C (emphasis added).

Courts have construed the phrase "any" claim broadly in favor of compelling arbitration. *See Associated Brick Mason Contractors of Greater N.Y., Inc. v. Harrington*, 820 F.2d 31, 35-36 (2d Cir. 1987). "[T]he word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *United States v. Gonzales*, 520 U.S. 1, 5 (1997) (quoting Webster's Third New International Dictionary 97 (1976)). Here, the Terms define products as "all of our products and services, including our apps, websites, and software." *See* Kepczynski Decl. ¶¶ 2, 17. The Grammarly writing assistant—including the Expert Review feature embedded in it—is a

"product[]" within the meaning of the Terms of Service. The phrase "relate" means "[t]o have some connection to" or "to stand in relation to" something—in this case, to the "product." *Relate*, *Black's Law Dictionary* (12th ed. 2024). Each of Plaintiff's "claim[s]" in this suit "relat[e] to"—*i.e.*, is "ha[s] some connection to"—Grammarly's "product[]," its functionality, and its purported violation of Plaintiff's rights. Specifically, Plaintiff alleges that the Expert Review feature generated and presented writing suggestions by "experts" to users without the consent of those "experts." *See, e.g.*, Compl. ¶¶ 16-22. Plaintiff's claims hinge on how the Expert Review feature operated—for example, what inputs the Expert Review feature received from users, what large language model (LLM) was used for the prompts, what prompts were issued, and whether consent was ever obtained. Thus, Plaintiff's claims undoubtedly "relat[e] to" the Expert Review, which is undoubtedly a Grammarly "product[]."

"[T]he existence of any broad agreement to arbitrate," like the Arbitration Provision in question, "creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *See Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 653 (2d Cir. 2004) (quotation marks omitted). "Doubts should be resolved in favor of coverage." *Id.* (quotation marks omitted).

Courts routinely enforce arbitration provisions that are similarly broad. *See, e.g.*, *Pabon v. HRB Digital LLC*, No. 23-CV-5363, 2025 WL 2254008, at *3 (E.D.N.Y. Aug. 7, 2025) (holding that privacy claims based on alleged third-party pixel disclosures fell within a broad arbitration clause, even though plaintiff argued the clause should be limited to disputes directly concerning tax-return preparation); *Gould v. Hyundai Motor Co.*, No. 8:23-CV-01344-JWH-DFM, 2025 WL 26806, at *13 (C.D. Cal. Jan. 3, 2025) (compelling arbitration of false advertising claims regarding

electric charging based on agreement to arbitrate created when signing up for the vehicle's entertainment and Bluetooth features); *Mey v. DIRECTV, LLC*, 971 F.3d 284, 292-94 (4th Cir. 2020) (holding that the Telephone Consumer Protection Act claims against later-acquired affiliate DIRECTV fell within plaintiff's AT&T wireless arbitration agreement, even though plaintiff had not contracted for or used DIRECTV's services, given the clause's broad language covering affiliates, advertising claims, and statutory claims); *Tomlin v. Roblox Corp.*, No. CV 25-4301, 2026 WL 1412606, at *2-4 (E.D. Pa. May 20, 2026) (compelling arbitration of products liability, failure-to-warn, negligence, misrepresentation, and fraud claims alleging harms from online gaming products where users were required to accept online terms containing arbitration provisions before accessing the products).

### C. The Court Should Enforce the Class Action Waiver.

In addition to agreeing to arbitrate her claims against Grammarly, Plaintiff also agreed that she would not bring any claims as part of a class action:

> ***NO CLASS ACTIONS.*** You may only resolve disputes with us individually. That is, you may not bring a claim as a plaintiff or a class member in a class, consolidated, or representative action. Class arbitrations, class actions, private attorney general actions, and consolidation with other arbitrations aren't allowed.

Kepczynski Decl. ¶ 26, Ex. C (emphasis in original).

Nonetheless, Plaintiff seeks to represent nationwide and state classes of "experts" whose names were purportedly used in Grammarly's Expert Review feature. *See* Compl. ¶¶ 35-47. Plaintiff's agreement not to proceed as part of a class action is valid and binding, and the Court should enforce that agreement.

The FAA "requires courts rigorously to enforce arbitration agreements according to their terms." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018) (quotation marks omitted). Class waivers, in particular, must be enforced because "[r]equiring the availability of classwide

arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Concepcion*, 563 U.S. at 344. "[W]ith class arbitration," the Supreme Court has held, "the virtues Congress originally saw in arbitration, its speed and simplicity and inexpensiveness, would be shorn away and arbitration would wind up looking like the litigation it was meant to displace." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 185 (2019) (quotation marks omitted). For that reason, the Supreme Court held that a court "may not compel arbitration on a classwide basis" even "when an agreement is 'silent' on the availability of such arbitration." *Id.* at 178 (citing *Stolt-Nielsen*, 559 U.S. at 662).

Here, where the Terms expressly prohibit arbitration on a class basis, the Court should dismiss the class claims and compel individual arbitration. The Court of Appeals for the Second Circuit and courts in this District regularly enforce class waivers in arbitration agreements and require plaintiffs to proceed individually in arbitration. *See, e.g.*, *Horton v. Dow Jones & Co.*, 804 F. App'x 81, 84 (2d Cir. 2020); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 295-99 (2d Cir. 2013); *Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483, 486-87 (2d Cir. 2013); *Guerriero v. Sony Elecs. Inc.*, No. 21 CV 2618 (VB), 2022 WL 736428, at *3-4 (S.D.N.Y. Mar. 11, 2022); *Camilo v. Uber Techs., Inc.*, No. 17 CIV. 9508 (AKH), 2018 WL 2464507, at *3 (S.D.N.Y. May 31, 2018); *Sacchi v. Verizon Online LLC*, No. 14-CV-423-RA, 2015 WL 765940, at *10 (S.D.N.Y. Feb. 23, 2015); *Shetiwy v. Midland Credit Mgmt.*, 959 F. Supp. 2d 469, 474-75 (S.D.N.Y. 2013). Similarly, here, because Plaintiff's agreement not to proceed as part of a class action is valid and binding, the Court should enforce that agreement.

### D. The Court Should Stay This Action Pending Arbitration.

The FAA provides that where a court is asked to decide a motion to compel arbitration, "the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall on application of one of*

*the parties stay the trial of the action* until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3 (emphasis added). A stay of the proceedings is mandatory "after all claims have been referred to arbitration and a stay [has been] requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015); *see also Hidalgo*, 468 F. Supp. 3d at 661 (Koeltl, J.) (entering a stay where "all claims have been ordered to be submitted to arbitration and the defendant has requested that the Court enter a stay of proceedings"); *Applebaum*, 263 F. Supp. 3d at 470 (Koeltl, J.) (same).

## V. CONCLUSION

For the foregoing reasons, Superhuman respectfully requests that the Court grant its motion to compel arbitration of Plaintiff's claims, enforce a class action waiver, dismiss her class claims, and stay this action pending arbitration.

Dated: June 15, 2026
New York, New York

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP

*/s/ Daniel E. Raymond*
Dori Ann Hanswirth
Theresa M. House
250 W. 55th Street
New York, New York 10019-9710
Tel.: (212) 836-8000
Dori.Hanswirth@arnoldporter.com
Theresa.House@arnoldporter.com

Daniel E. Raymond (*pro hac vice*)
300 North LaSalle Street, Suite 3500
Chicago, Illinois 60654-3406
Tel.: (312) 583-2300
Daniel.Raymond@arnoldporter.com

*Attorneys for Defendant Superhuman Platform Inc.*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Section III.D of Judge Koeltl's Individual Practices, I hereby certify that this memorandum of law complies with Judge Koeltl's formatting rules and contains 6,296 words, excluding the cover page, certification of compliance, table of contents, and table of authorities.

*/s/ Daniel E. Raymond*
Daniel E. Raymond

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 15, 2026, a copy of the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Southern District of New York, using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

*/s/ Daniel E. Raymond*
Daniel E. Raymond