**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JULIA ANGWIN, on behalf of herself and all others similarly situated,

*Plaintiffs*,

v.

SUPERHUMAN PLATFORM INC.,

*Defendant*.

Case No. 1:26-cv-02005 (JGK) (RWL)

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SUPERHUMAN PLATFORM INC.'S MOTION TO DISMISS

Dated: June 15, 2026
New York, New York

ARNOLD & PORTER KAYE SCHOLER LLP

Dori Ann Hanswirth
Theresa M. House
250 W. 55th St.
New York, NY 10019
(212) 918-3000
Dori.Hanswirth@arnoldporter.com
Theresa.House@arnoldporter.com

Daniel Raymond (*pro hac vice*)
300 North LaSalle Dr.
Suite 3500
Chicago, IL 60654
(312) 583-2379
Daniel.Raymond@arnoldporter.com

*Attorneys for Defendant Superhuman Platform Inc.*

# TABLE OF CONTENTS

**Page**


INTRODUCTION ....................................................................................................................1

SUMMARY OF ARGUMENT....................................................................................................2

BACKGROUND.....................................................................................................................3

LEGAL STANDARD ..............................................................................................................8

ARGUMENT ........................................................................................................................8

I. The New York Claim Must Be Dismissed ...........................................................8

A. Superhuman's Use Did Not Violate the Plain Text of Section 51 ..........................8

B. Superhuman's Use Is Protected Speech...........................................................12

1. The Challenged Use Falls Within New York's Newsworthiness and Public-Interest Exception ............................................................13

2. The Challenged Use Is Expressive ...........................................................15

C. Superhuman's Uses Were Incidental .............................................................17

II. The California Right-of-Publicity Claims Must Be Dismissed ...............................18

A. The California Claims Must Be Dismissed Under Choice-of-Law Principles...........................................................................................................19

B. The California Right-of-Publicity Claims Fail on the Merits ...............................20

III. The Unjust-Enrichment Claim Is Invalid And Must Be Dismissed ..........................21

IV. Plaintiff's Claims Are Preempted by the Copyright Act ..........................................23

CONCLUSION ....................................................................................................................24

CERTIFICATE OF SERVICE ..................................................................................................26

CERTIFICATE OF COMPLIANCE ............................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arrington v. N.Y. Times Co.*,
55 N.Y.2d 433 (1982), *cert. denied*, 459 U.S. 1146 (1983) ....9, 10, 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....8

*Bendit v. Canva, Inc.*,
No. 23-cv-473, 2023 WL 5391413 (S.D.N.Y. Aug. 22, 2023)....10

*Brooks v. Thomson Reuters Corp.*,
No. 21-cv-1418, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ....20, 21

*Brown v. Ent. Merchs. Ass'n*,
564 U.S. 786 (2011)....16

*Burck v. Mars, Inc.*,
571 F. Supp. 2d 446 (S.D.N.Y. 2008)....15

*Cerasani v. Sony Corp.*,
991 F. Supp. 343 (S.D.N.Y. 1998) ....10

*Champion v. Moda Operandi, Inc.*,
561 F. Supp. 3d 419 (S.D.N.Y. 2021)....19

*Cosgrove v. Oregon Chai, Inc.*,
530 F. Supp. 3d 562 (S.D.N.Y. 2021)....3

*Costanza v. Seinfeld*,
181 Misc. 2d 562 (Sup. Ct., N.Y. Cnty. 1999),
*aff'd as modified*, 279 A.D.2d 255 (1st Dep't 2001) ....11

*Cummings v. Soul Train Holdings LLC*,
67 F. Supp. 3d 599 (S.D.N.Y. 2014)....19

*D'Andrea v. Rafla-Demetrious*,
972 F. Supp. 154 (E.D.N.Y. 1997), *aff'd*, 146 F.3d 63 (2d Cir. 1998)....................................17

*Dallesandro v. Henry Holt & Co., Inc.*,
166 N.Y.S.2d 805 (1st Dep't 1957),
*appeal dismissed,* 7 N.Y.2d 735 (1959)...........................................................................18

*ESG Cap. Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) ........................................................................................22

*Finger v. Omni Publ'ns Int'l, Ltd.*,
77 N.Y.2d 138 (1990) ..............................................................................12, 14, 15

*Foster v. Svenson*,
128 A.D.3d 150 (1st Dep't 2015) ....................................................................................14

*Garb v. Republic of Poland*,
440 F.3d 579 (2d Cir. 2006)............................................................................................16

*GlobalNet Financial.com, Inc. v. Frank Crystal & Co., Inc.*,
449 F.3d 377 (2d Cir. 2006)............................................................................................19

*Gravano v. Take-Two Interactive Software, Inc.*,
142 A.D.3d 776 (1st Dep't 2016),
*aff'd*, 31 N.Y.3d 988 (2018)............................................................................................16

*Griffith v. TikTok, Inc.*,
No. 5:23-cv-964, 2023 WL 9019035 (C.D. Cal. Dec. 13, 2023)............................................22

*Heilbut v. Cassava Scis., Inc.*,
778 F. Supp. 3d 551 (S.D.N.Y. 2025)...............................................................................24

*Heller v. Fam. Circle, Inc.*,
85 A.D.2d 679 (2d Dep't 1981),
*appeal dismissed*, 56 N.Y.2d 807 (1982)...........................................................................10

*Hoepker v. Kruger*,
200 F. Supp. 2d 340 (S.D.N.Y. 2002).........................................................................10, 14

*Hooked Media Grp., Inc. v. Apple Inc.*,
269 Cal. Rptr. 3d 406 (Cal. Ct. App. 2020),
*review denied in relevant part*, 472 P.3d 1064 (Cal. 2020)....................................................23

*Immuno AG v. Moor-Jankowski*,
77 N.Y.2d 235 (1991) .......................................................................................................12

*In re Facebook, Inc.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ....................21

*In re Jackson,*
972 F.3d 25 (2d Cir. 2020)....................23

*Kane v. Orange Cnty. Publ'ns*,
232 A.D.2d 526 (2d Dep't 1996) ....................11

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
313 U.S. 487 (1941)....................19

*Lightbourne v. Printroom Inc.*,
307 F.R.D. 593 (C.D. Cal. 2015) ....................20

*Liu v. Indium Corp. of Am.*,
No. 20-64, 2021 WL 3822871 (2d Cir. Aug. 27, 2021) ....................9, 11

*Lohan v. Perez*,
924 F. Supp. 2d 447 (E.D.N.Y. 2013) ....................17, 22, 23

*Lohan v. Take-Two Interactive Software, Inc.*,
31 N.Y.3d 111 (2018) ....................12

*Lombardo v. Doyle, Dane & Bernbach, Inc.*,
58 A.D.2d 620 (2d Dep't 1977) ....................15

*Melendez v. Sirius XM Radio, Inc.*,
50 F.4th 294 (2d Cir. 2022) ....................23

*Messenger v. Gruner + Jahr Printing & Pub.*,
94 N.Y.2d 436, 441 (2000) ....................9, 14, 15

*Murray v. N.Y. Mag. Co.*,
27 N.Y.2d 406 (1971) ....................10

*Pagan v. N.Y. Herald Trib., Inc.*,
301 N.Y.S.2d 120 (1st Dep't 1969),
*aff'd*, 26 N.Y.2d 941 (1970)....................9

*Pirone v. MacMillan, Inc.*,
No. 88-cv-3173, 1989 WL 230549 (S.D.N.Y. June 28, 1989),
*aff'd*, 894 F.2d 579 (2d Cir. 1990) ....................18

*Rand v. Hearst Corp.*
31 A.D.2d 406 (1st Dep't 1969), *aff'd*, 26 N.Y.2d 806 (1970) ....................13

*Roberson v. Rochester Folding Box Co.*,
171 N.Y. 538 (1902) ..........9

*Rogers v. Grimaldi*,
875 F.2d 994 (2d Cir. 1989)..........19

*Schultz v. Boy Scouts of Am., Inc.*,
65 N.Y.2d 189 (1985) ..........19

*Shaw v. Rizzoli Int'l Pub., Inc.*,
No. 96-cv-4259, 1999 WL 160084 (S.D.N.Y. Mar. 23, 1999) (Koeltl, J.)..........17, 18

*Sondik v. Kimmel*,
33 Misc. 3d 1237(A) (Sup. Ct., Kings Cnty. 2011), *aff'd,* 131 A.D.3d 1041
(2d Dep't 2015)..........19

*Tasini v. AOL, Inc.*,
851 F. Supp. 2d 734 (S.D.N.Y. 2012) (Koeltl, J.) ..........22

*Tesfay v. HanesBrands Inc.*,
No. 1:19-cv-3889, 2019 WL 6879179 (S.D.N.Y. Dec. 17, 2019)..........8, 10

*Trump v. Vance*,
977 F.3d 198 (2d Cir. 2020)..........4

*Univ. of Notre Dame Du Lac v. Twentieth Century-Fox Film Corp.*,
22 A.D.2d 452 (1st Dep't),
*aff'd*, 15 N.Y.2d 940 (1965)..........17

*Videri, Inc. v. ONAWHIM (OAW) Inc.*,
No. 1:23-cv-2535, 2024 WL 4027980 (S.D.N.Y. Sept. 3, 2024) ..........6

*Welch v. Grp. W. Prods., Inc.*,
525 N.Y.S.2d 466 (Sup. Ct., N.Y. Cnty. 1987) ..........9

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings*, *LLC*,
127 F. Supp. 3d 156 (S.D.N.Y. 2015)..........6

**Other Authorities**

*Becoming Superhuman*, Grammarly (Oct. 29, 2025),
https://www.grammarly.com/blog/company/introducing-new-superhuman/ ..........3

Casey Newton, *Grammarly turned me into an AI editor against my will and I hate it*, Platformer (Mar. 9, 2026), https://www.platformer.news/grammarly-expert-review-reviewed/..........4

Stevie Bonifield, *Grammarly Says It Will Stop Using AI to Clone Experts Without Permission,* The Verge (Mar. 11, 2026), https://www.theverge.com/ai-artificial-intelligence/893270/grammarly-ai-expert-review-disabled ........................................7

Federal Rule of Civil Procedure 12(b)(6) ........................................................................8

New York Constitution ........................................................................................12, 13

## INTRODUCTION

Plaintiff Julia Angwin ("Plaintiff"), individually and purportedly on behalf of a class of other professional writers, challenges a familiar and constitutionally protected practice: helping people improve their writing by interpreting the style and technique of accomplished writers. Invoking New York and California law, Plaintiff alleges that Defendant Superhuman Platform Inc. ("Superhuman"), the owner and operator of the well-known writing platform Grammarly, violated her privacy and personality rights when a Grammarly feature called "Expert Review" provided editing suggestions "inspired by" Plaintiff's published writings.

But Plaintiff is wrong. The law does not give her veto power over references to her public work, nor does it prohibit writing tools from helping users learn from the style and technique of accomplished writers. New York, where Plaintiff lives, provides the law applicable to her claim, not California. And even accepting Plaintiff's allegations as true, Superhuman's conduct does not run afoul of New York's narrowly construed statutory right to privacy. Nor would it violate California law if it applied.

This is because Plaintiff does *not* allege that Superhuman used her name to advertise its services. Rather, she challenges the use of her name *within* Superhuman's Expert Review feature itself, where it appeared alongside writing suggestions expressly described as "inspired by" her "publicly-available work." That kind of style-based analysis and writing instruction is not unlawful misappropriation. It is protected expression.

Plaintiff's theory to the contrary runs afoul of well-established limits on misappropriation claims where the challenged use involves the communication of ideas of public interest or other expressive content—limits that safeguard the First Amendment-grounded right to use publicly available writing for analysis and commentary. Those principles separately foreclose Plaintiff's claims. Accordingly, each of Plaintiff's claims fails and should be dismissed.

## SUMMARY OF ARGUMENT

Plaintiff's New York law claim fails for multiple independent reasons. First, the Complaint does not plausibly allege conduct falling within the narrow scope of New York's Section 51, which applies only to the use of a person's name "for advertising purposes" or "for the purposes of trade." The alleged use here—displaying suggestions within a writing tool—does not satisfy either requirement. Second, even if the statute were implicated, the challenged use is protected by established free-speech principles because it involved the generation and communication of new, expressive content concerning matters of public interest. Third, the alleged use was, at most, incidental to the Grammarly product's main purpose and therefore is not actionable under New York law.

Plaintiff's California claims should be dismissed because New York law governs this dispute. Under well-established choice-of-law principles, right-of-privacy claims are governed by the law of the plaintiff's domicile—here, New York. And even if California law applied, Plaintiff's claims would still fail because the alleged use did not involve the type of advertising or promotional exploitation that California law requires.

Plaintiff's unjust-enrichment claim likewise fails. Under New York law, such a claim is preempted when based on the same alleged misappropriation underlying a Section 51 claim, and in any event requires a plausible allegation that the plaintiff reasonably expected compensation for the conduct at issue—something the Complaint does not and cannot allege. The unjust-enrichment claim also fails under California law because, at most, courts treat unjust enrichment as a quasi-contract theory of restitution, and Plaintiff alleges no quasi-contractual relationship, direct benefit conferred on Superhuman, or void or rescinded transaction—only the same alleged misappropriation underlying her other claims.

Finally, to the extent Plaintiff's claims are based on the allegedly unauthorized use of her published works, those claims are preempted by the Copyright Act.

For all of these reasons, the Complaint should be dismissed in its entirety, with prejudice.

## BACKGROUND

Plaintiff is an investigative journalist and author residing in New York. Compl. ¶¶ 4-6, ECF 1. She has written extensively on technology and privacy issues. *Id*. Defendant Superhuman is a Delaware corporation headquartered in San Francisco that owns and operates Grammarly, a digital product that helps people improve their writing.[1] *Id.* ¶ 8. Grammarly is part of Superhuman's productivity suite, which seamlessly blends artificial intelligence ("AI")-powered writing tools into the user experience across one million different applications and agents, allowing users to integrate Superhuman's writing improvements directly, regardless of whether they are working in a webpage, a desktop app, or a mobile application.[2] In other words, Superhuman's writing tools bring AI to wherever people work, rather than acting as a separate platform. *Id.* Superhuman has 40 million daily active users. Compl. ¶ 13. Most features are accessible in the free version, but for a fee ($12 per month in the United States), users can gain unlimited access to its Pro features. *Id.* ¶¶ 2, 14.

---

[1] Superhuman offers multiple versions of the Grammarly writing program, including Grammarly Enterprise, Superhuman Go, and others. Compl. ¶ 36. We refer to these collectively as "Grammarly" or the "Grammarly product."

[2] *See* Shishir Mehrotra, *Becoming Superhuman*, Grammarly (Oct. 29, 2025), https://www.grammarly.com/blog/company/introducing-new-superhuman/. The Court may take judicial notice of this information because a "court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination." *Cosgrove v. Oregon Chai, Inc.*, 530 F. Supp. 3d 562, 581 n.5 (S.D.N.Y. 2021) (quotation marks omitted).

In August 2025, Superhuman launched a feature called Expert Review ("Expert Review") as part of its offerings within the Grammarly product. *Id.* ¶ 16. As one feature among the Grammarly product's broader suite of digital tools designed to help users write more effectively, *id*. ¶ 13, the Expert Review feature offered stylistic and expressive suggestions relevant to the subject matter of users' content, *id*. ¶ 16. Specifically, using AI, the Expert Review feature analyzed users' writing, identified its subject matter or genre, and then created individualized feedback, which was designed to educate users about how they could improve their writing based on insights gleaned from the writing styles of other authors' works in related fields. *Id.* ¶¶ 14, 17.[3] The AI model generated those suggestions by drawing inspiration from the "publicly-available work" of various subject-matter and literary experts. *Id.* ¶¶ 16, 22.

The feature functioned as follows. When a user authored a writing piece, the feature reviewed the text, *id.* ¶ 17, used an AI prompt to identify relevant experts whose publicly available works were interpreted to be germane to the user's writing, and then "[a]ppl[ied] ideas from" these experts' works to offer writing suggestions. *Id.* As reflected in the Complaint, the feature displayed short, context-specific editorial suggestions next to portions of the user's text—the kind of craft-focused writing advice commonly found in writing guides—with the relevant

[3] In the Complaint, Plaintiff acknowledges that several of Superhuman's tools use AI. Compl. ¶¶ 14, 23 (citing Casey Newton, *Grammarly turned me into an AI editor against my will and I hate it*, Platformer (Mar. 9, 2026), https://www.platformer.news/grammarly-expert-review-reviewed/ (hereinafter "Platformer Article")). The Court may consider this article because Plaintiff incorporated it by reference in her Complaint. *See, e.g.*, *Trump v. Vance*, 977 F.3d 198, 210 n.8 (2d Cir. 2020) ("We may properly consider the full contents of this article because it is incorporated by reference into the [complaint].").

expert's name and background cited as the source of inspiration for those suggestions. *Id.* ¶¶ 17-18.

The following screenshot, taken from a news article incorporated by reference in the Complaint, *id.* ¶ 23, illustrates how Expert Review presented suggestions to users:




Example suggestions included: "Lead with personal stake," "Sharpen the opening," "Simplify technical tracker description," "Frame legal stakes succinctly," "Clarify the 'so what' after each finding," and "Clarify crowd-sourced method upfront." *Id.* ¶ 18.

Users were repeatedly informed that the Expert Review suggestions were "inspired" by experts and their public works. *Id.* ¶ 19. The above screenshot, which displays what a user saw when they clicked on an individual suggestion, expressly stated the "suggestion is inspired" by the expert's "publicly-available work," as highlighted by the blue outline. *Id.* ¶¶ 19, 22. The Expert Review feature also explicitly disclosed that the suggestions were "inspired by experts"—a statement that was visible without users having to click to expand the suggestion—as highlighted by the blue outline in the below screenshot.




Declaration of Ailian Gan, Ex. A.[4] The Expert Review interface also displayed an express disclaimer within the feature itself (as highlighted by the red outline in the above image), stating:

---

[4] The Court may consider images illustrating the Expert Review display. The Complaint includes an image showing a part of the feature, upon which it relies to support its allegations. Compl. ¶¶ 17-20. Accordingly, the Court may consider additional images of the same feature as incorporated by reference. *See Videri, Inc. v. ONAWHIM (OAW) Inc.*, No. 1:23-cv-2535, 2024 WL 4027980, at *1 n.1 (S.D.N.Y. Sept. 3, 2024) (considering both webpage relied on in complaint and defendant's declaration providing webpage at time of dispute when deciding motion to dismiss). Additionally, the Court may consider these images because the Complaint heavily relies on the Expert Review display, rendering it integral to the Complaint. *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F.

"References to experts in this product are for informational purposes only and do not indicate any affiliation with Grammarly or endorsement by those individuals or entities." *Id.* The feature's support page included the same disclaimer. Compl. ¶ 23 (citing Platformer Article). In short, within the feature itself and in related documentation, users were explicitly informed that suggestions were inspired by the expert's published works and that there was no affiliation or endorsement by the experts.

Plaintiff does not allege that her name—or any expert's name—was used in any advertisement or promotional material for Grammarly or Expert Review. Rather, the Complaint alleges only that the feature reviewed her "publicly-available work" in order "to craft writing advice" that was "based on that work" and was intended to educate users about how they could improve their writing—i.e., that her name was used solely *within* the Expert Review feature. *Id.* ¶ 22.

After learning of Expert Review via news reports, Plaintiff filed this action on March 11, 2026. *Id.* ¶ 23. Superhuman has since permanently disabled the Expert Review feature, meaning it was available to Grammarly users for only nine months.[5] Superhuman waived service of process on March 24. ECF 6. The parties appeared for a pre-motion conference on May 29. ECF 14. An initial case management conference is scheduled for July 29. ECF 6.

---

Supp. 3d 156, 167-68 (S.D.N.Y. 2015) (considering documents "not specifically incorporated by reference but on which the complaint relies and which [are] integral to it").

[5] *See* Stevie Bonifield, *Grammarly Says It Will Stop Using AI to Clone Experts Without Permission*, The Verge (Mar. 11, 2026), https://www.theverge.com/ai-artificial-intelligence/893270/grammarly-ai-expert-review-disabled.

## LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must be dismissed if it fails to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To state a facially plausible claim, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Tesfay v. HanesBrands Inc.*, No. 1:19-cv-3889, 2019 WL 6879179, at *3 (S.D.N.Y. Dec. 17, 2019) (quoting *Iqbal*, 556 U.S. at 678) (dismissing Section 51 claim).

## ARGUMENT

### I. The New York Claim Must Be Dismissed

Plaintiff's New York Section 51 claim should be dismissed for three independent reasons.[6] Plaintiff does not plausibly allege that Superhuman's use falls within the plain terms of Section 51. But even if it did, the challenged use constitutes protected activity, and it cannot be characterized as anything other than incidental.

#### A. Superhuman's Use Did Not Violate the Plain Text of Section 51

Section 51 provides a cause of action to a plaintiff whose name is used "for advertising purposes or for the purposes of trade." N.Y. Civ. Rts. L. § 51. Use for "advertising purposes" is

[6] Plaintiff brings her claim under both Sections 50 and 51. Compl. ¶¶ 62-70. Section 50 is a criminal statute; only Section 51 creates a private cause of action. Accordingly, this Motion refers to Section 51. But the analysis applies equally to both sections.

defined as "a use for the solicitation of patronage," intended to promote the sale of a collateral "service or product." *Pagan v. N.Y. Herald Trib., Inc.*, 301 N.Y.S.2d 120, 122-23 (1st Dep't 1969), *aff'd*, 26 N.Y.2d 941 (1970); *see Welch v. Grp. W. Prods., Inc.*, 525 N.Y.S.2d 466, 468 (Sup. Ct., N.Y. Cnty. 1987). "Whether a name is used for the purposes of trade is determined by examining … whether the use of [plaintiff's] name was intended to attract new customers to purchase [defendant's] products." *Liu v. Indium Corp. of Am.*, No. 20-64, 2021 WL 3822871, at *3 (2d Cir. Aug. 27, 2021).

New York courts have "narrowly construed" these terms to encompass *only* commercial uses of a person's identity in advertising or promotion—that is, uses directed at attracting new customers or patronage. *Messenger v. Gruner + Jahr Printing & Pub.*, 94 N.Y.2d 436, 441, 444 (2000) (Section 51 does not apply to expressive content that was not an "advertisement in disguise"); *see Arrington v. N.Y. Times Co.*, 55 N.Y.2d 433, 439 (1982), *cert. denied*, 459 U.S. 1146 (1983) (Section 51 was "drafted narrowly to encompass only the commercial use of an individual's name or likeness and no more").[7] Plaintiff's allegations do not satisfy that standard.

Plaintiff's bare allegations that Superhuman used her name "to sell more subscriptions," "to advance Superhuman's commercial purposes," "for the purposes of trade," and "for the

[7] Section 51's well-documented history underscores its limited purpose and scope. The New York Legislature enacted the statute in response to the Court of Appeals' decision in *Roberson v. Rochester Folding Box Co.*, 171 N.Y. 538 (1902), which held that, because New York has no common-law right of privacy, there was no recourse for an infant plaintiff whose photograph was distributed throughout the country to advertise defendant's flour. *Id.* at 542, 557. New York's Legislature responded, not by "undertak[ing] to roll back the court-pronounced refusal to countenance an action for invasion of privacy," *Arrington*, 55 N.Y.2d at 439, but rather with a "pointed objective," *Messenger*, 94 N.Y.2d at 441—namely, to "confine[] its measured departure from existing case law to circumstances akin to those presented in *Roberson*," *Arrington*, 55 N.Y.2d at 439.

purpose of making revenue and profit" (Compl. ¶ 2, 30, 66, 67) are either conclusory contentions unsupported by any factual content or mere recitations of the legal standard that the Court should not credit. *See Tesfay*, 2019 WL 6879179, at *6 (categorizing similar allegation as "a legal conclusion, not a factual allegation"). Further, New York courts have repeatedly warned that "[t]he fact that the publication or use of a name or picture is spurred by a profit motive or included to encourage sales or distribution of the publication is a necessary, but hardly a sufficient, ingredient in determining the existence of a trade purpose." *E.g.*, *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 357 (S.D.N.Y. 1998) (citing *Arrington*, 55 N.Y.2d at 440).

Indeed, the facts Plaintiff alleges confirm that Section 51 is not implicated. Conspicuously absent from the Complaint is any allegation that Superhuman used Plaintiff's name outside of the Expert Review product itself—indeed, there is *no* allegation that her name was used in *any* marketing materials, promotional articles, advertising, investor presentations, or any other context designed to draw new customers to Superhuman. Plaintiff "fails to allege how [Superhuman] 'used' her [name] for any commercial advertising, as required." *Bendit v. Canva, Inc.*, No. 23-cv-473, 2023 WL 5391413, at *8 (S.D.N.Y. Aug. 22, 2023) (dismissing Section 51 claim).[8]

[8] Nor would it help Plaintiff even if Expert Review had some incidental promotional effect. *Murray v. N.Y. Mag. Co.*, 27 N.Y.2d 406, 409 (1971) (the fact that a photo's use on a magazine cover "may, perhaps, have stimulated magazine sales does not render it violative of the statute" if not "an advertisement in disguise" (citation omitted)); *Heller v. Fam. Circle, Inc.*, 85 A.D.2d 679, 681 (2d Dep't 1981), *appeal dismissed*, 56 N.Y.2d 807 (1982) ("even if the [use] might have had an incidental promotional effect," that "alone would not give rise to liability"). Likewise, "advertising that is undertaken in connection with a use protected by the First Amendment falls outside the statute's reach" under the "incidental use" exception. *See Hoepker v. Kruger*, 200 F. Supp. 2d 340, 350-51 & n.16 (S.D.N.Y.

Nor does Plaintiff allege what New York courts interpreting Section 51 require: facts showing that her name was used to "draw trade to the firm," *Kane v. Orange Cnty. Publ'ns*, 232 A.D.2d 526, 527 (2d Dep't 1996), or that her "name was used to attract customers to" Superhuman, *Liu*, 2021 WL 3822871, at *3; *see Costanza v. Seinfeld*, 181 Misc. 2d 562, 565 (Sup. Ct., N.Y. Cnty. 1999), *aff'd as modified*, 279 A.D.2d 255 (1st Dep't 2001) ("The sort of commercial exploitation prohibited and compensable if violated is solicitation for patronage."). Plaintiff's bare invocations of "trade," *see, e.g.*, Compl. ¶ 66, add nothing. Instead, Plaintiff alleges only that her name appeared within Expert Review itself, alongside writing suggestions generated for users and described as "inspired" by her "publicly-available work." *Id.* ¶¶ 17-19, 22. That is an allegation about the expressive content conveyed by the feature, not an allegation that Superhuman used Plaintiff's name to draw trade to Superhuman.

The recent decision in *Lehrman v. Lovo, Inc.* illustrates this distinction. 790 F. Supp. 3d 348 (S.D.N.Y. 2025). There, the court held plaintiffs plausibly alleged a claim where their cloned voices appeared in publicly posted product tutorials, promotional articles, and an investor presentation—all uses designed "to increase the appeal of [the defendant's] software, acquire subscribers, and retain subscribers it already had." *Id.* at 383. The uses were all promotional uses—separate from the product itself—that were intended to draw trade to the firm. *See id.*[9] Here, Plaintiff alleges no facts to plausibly suggest Superhuman used her name to attract

2002) (promotions that "prove the worth and illustrate the content" of First Amendment-protected speech are not actionable (alterations omitted)).

[9] The *Lehrman* court did not mention the "incidental use" exception, *see supra* n.8, and the defendant did not raise a First Amendment or public interest defense. *See* 790 F. Supp. 3d at 383.

customers to Superhuman; to the contrary, Superhuman used Plaintiff's name only within one feature of its Grammarly product—a lawful use that is not prohibited by Section 51.

Because Plaintiff does not plausibly allege that Superhuman's use was the kind of customer-attracting promotion that Section 51 addresses, she has not alleged a violation of the statute.

**B. Superhuman's Use Is Protected Speech**

Even if Plaintiff had adequately alleged that Superhuman's use was for advertising or trade purposes (she did not), Superhuman's use is nevertheless protected. New York courts have "cabin[ed] section 51 to avoid any conflict with the free dissemination of thoughts, ideas, newsworthy events, and matters of public interest guaranteed by the First Amendment." *Lohan v. Take-Two Interactive Software, Inc.*, 31 N.Y.3d 111, 120 (2018) (citations omitted). These free-expression values are also strongly protected by the New York Constitution. *See Immuno AG v. Moor-Jankowski*, 77 N.Y.2d 235, 248 (1991) ("the protection afforded by the guarantees of free press and speech in the New York Constitution is often *broader* than the minimum required by the Federal Constitution" (citation omitted) (emphasis added)). New York courts have applied these principles to dismiss Section 51 claims where the challenged use involves the communication of ideas or matters of public interest. *See, e.g.*, *Finger v. Omni Publ'ns Int'l, Ltd.*, 77 N.Y.2d 138, 141-43 (1990).

Plaintiff's theory, if accepted, would threaten the right to study, analyze, and teach from the publicly available work of accomplished writers, a foundational expressive tradition that courts have consistently protected across diverse contexts. Plaintiff is essentially asking this Court to give her a veto over that tradition. Neither the First Amendment, the New York Constitution, nor Section 51 permit that result.

### 1. *The Challenged Use Falls Within New York's Newsworthiness and Public-Interest Exception*

The challenged conduct falls squarely within New York's broad newsworthiness and public-interest exception. As alleged, the Expert Review feature provided informational and educational commentary—derived from published works—on a matter of public interest: the study of writing style and technique.

New York courts have specifically recognized that using an author's name to describe or compare writing style is a matter of public interest and is therefore not actionable under Section 51. In *Rand v. Hearst Corp.*, the court rejected a right-of-privacy claim based on the use of author Ayn Rand's name to compare an author's writing style to hers. 31 A.D.2d 406, 412 (1st Dep't 1969), *aff'd*, 26 N.Y.2d 806 (1970). There, the publisher defendant printed on a book cover an excerpt from a newspaper review comparing the author's writing style to Rand's. *Id.* at 407. Dismissing the complaint, the court explained that the right to "discuss [a public figure's] work, to comment on it, to criticize and compare, is thrown into the public domain." *Id.* at 410. It further held that if the defendant "compared the work of the author with that of the plaintiff—an author of public renown whose work is properly subject to comment—it does not bring such comment within the proscription of the statute" because such "comparison, without question, is of public interest" and serves as a means of "informing the public of the nature and style" of a work. *Id.* Therefore, comparative commentary that explains or evaluates an author's style is "of public interest" and therefore outside the statute's reach. *Id.*

The allegations in the Complaint place Superhuman's Expert Review feature squarely within that framework. The feature analyzed a user's text and indicated it is "[a]pplying ideas from various experts." Compl. ¶ 17 (quotation marks omitted). According to the Complaint, the feature then "states the name of the expert with a brief comment about how to improve that text,

like 'Lead with personal stake'" or "'Sharpen the opening.'" *Id.* ¶ 18. If a "user then clicks on the comment, a more detailed suggestion is provided, and Grammarly states that the 'suggestion is inspired' by the relevant expert." *Id.* ¶ 19. The Complaint also acknowledges the Expert Review tool helped users by "[a]pplying ideas from various experts," *id.* ¶ 17 (quotation marks omitted), and that Superhuman "has helped tens of millions of people to improve their writing," *id.* ¶ 13; *see id.* ¶ 18 (feature shared editorial ideas with users); *id.* ¶ 20 (feature provided "perspective, insight, feedback, and comments on the users' writing"); *id.* ¶ 22 (feature "craft[ed] writing advice").

In other words, the feature offered users guidance on how to improve their writing *specifically* by drawing on, comparing, and interpreting the styles and techniques reflected in the work of well-known writers. That is information and educational content concerning the craft of writing—clearly topics of public interest—falling comfortably within the scope of New York's newsworthiness and public-interest exception.

Moreover, New York courts have made clear that this exception is "to be broadly construed," *Messenger*, 94 N.Y.2d at 441, and "should be liberally applied," *Finger*, 77 N.Y.2d at 143. The exception is not limited to "hard news," but extends to "any subject of public interest," including informational, educational, and entertainment content. *Messenger*, 94 N.Y.2d at 442. Indeed, courts have emphasized that the exception protects the dissemination of ideas with "informational value" and "many other forms of First Amendment speech" and "expression," *Foster v. Svenson*, 128 A.D.3d 150, 156 (1st Dep't 2015), including "discussion and commentary on [an artist] and her body of work," *Hoepker*, 200 F. Supp. 2d at 347-50. Judicial intervention is warranted only where the challenged use bears "no real relationship" to a

matter of public interest or is merely an "advertisement in disguise." *Finger*, 77 N.Y.2d at 142 (citation omitted).

If Plaintiff suggests that Expert Review's output did not reflect her views, *see* Compl. ¶ 22, that contention does not alter the analysis. New York law does not condition the newsworthiness and public-interest exception on a plaintiff's perception of the correctness of the challenged expression. *See, e.g.*, *Arrington*, 55 N.Y.2d at 441 (exception applies even though plaintiff's "views w[ere] not consonant with those of the author"); *accord Messenger*, 94 N.Y.2d at 441-42 (Section 51 must be construed narrowly to avoid impinging on free expression). At most, Plaintiff's suggestions about Expert Review's potential inaccuracies, Compl. ¶ 22, go to the commentary's substance—not whether it concerns a matter of public interest—and therefore does not negate its protected status.

**2. *The Challenged Use Is Expressive***

Independently, the challenged use is protected because it reflected the creation of expressive content rather than the appropriation of Plaintiff's identity. As alleged, the Expert Review feature analyzed Plaintiff's "publicly-available work" and synthesized stylistic elements to generate novel commentary and writing suggestions. *Id.* ¶¶ 18-22. Those comments—presented as context-specific writing tips—are themselves expressive content, reflecting interpretation and synthesis of prominent writers' works.

New York courts have made clear that Section 51 does not prohibit this kind of expressive use. Rather, the law "is to be strictly construed and is not to be applied so as to prohibit the portrayal of an individual's personality or style of performance." *Lombardo v. Doyle, Dane & Bernbach, Inc.*, 58 A.D.2d 620, 622 (2d Dep't 1977); *see Burck v. Mars, Inc.*, 571 F. Supp. 2d 446, 452 (S.D.N.Y. 2008). Mimicking or drawing upon an individual's style to

generate new expression—particularly where, as here, the output consists of original, context-specific commentary—does not fall within the narrow scope of Section 51.

Expert Review did exactly that. It analyzed publicly available writing and generated commentary that reflected particular authors' styles. As the Complaint itself alleges, Expert Review analyzed Plaintiff's published work and, based on that analysis, produced tailored suggestions—i.e., original expressive content—that translated stylistic principles into writing advice. *See* Compl. ¶¶ 18, 22. That output is protected expressive activity.

Expert Review's output resembled a well-established genre of books on writing techniques. For example, books like Tony Rossiter's *How to Write Like a Bestselling Author* (2017), Richard Cohen's *How to Write Like Tolstoy* (2016), R. Andrew Wilson's *Write Like Hemingway* (2009), and Matthew McGuinness's *Write Like Stephen King* (2018) all conduct analyses and provide output similar to Expert Review[10]: They examine prominent authors' works, identify their stylistic characteristics, and provide writing advice to the reader. No one suggests that such works are not expressive or violate Section 51. But under Plaintiff's theory, all of these works would be unlawful. It makes no difference that the Expert Review feature relied on the internet and provided more contextually appropriate feedback. *Cf. Gravano v. Take-Two Interactive Software, Inc.*, 142 A.D.3d 776, 777 (1st Dep't 2016), *aff'd*, 31 N.Y.3d 988 (2018) ("'[L]ike the protected books, plays, and movies that preceded them, video games communicate ideas' and deserve First Amendment protection." (quoting *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 790 (2011))).

[10] The Court may take judicial notice of these texts. *See, e.g.*, *Garb v. Republic of Poland*, 440 F.3d 579, 594 n.18 (2d Cir. 2006).

The same principle applies here. The Expert Review feature did not present or reproduce Plaintiff's speech, but instead generated new commentary inspired by her work—i.e., it transformed publicly available writing into new, context-specific expression. That kind of analysis and synthesis is paradigmatic expressive activity protected by the First Amendment.

### C. Superhuman's Uses Were Incidental

Independently, Superhuman's use did not violate Section 51 because Plaintiff's name was used only incidentally in the Grammarly product. New York courts have established an incidental-use exception, which provides that even when a plaintiff's name is used in a commercial product, that use does not violate Section 51 so long as the use is ancillary to the product's purpose or does not drive the product's commercial value. *See, e.g.*, *Lohan v. Perez*, 924 F. Supp. 2d 447, 455 (E.D.N.Y. 2013) (granting motion to dismiss because "the isolated nature of the use of [plaintiff's] name would, in and of itself, prove fatal to her [Section 51] claim"). Courts routinely dismiss Section 51 claims where the plaintiff's name plays a minimal role in the overall work. *E.g.*, *Shaw v. Rizzoli Int'l Pub., Inc.*, No. 96-cv-4259, 1999 WL 160084, at *7 (S.D.N.Y. Mar. 23, 1999) (Koeltl, J.) (finding two photographs of plaintiffs in 300-page book a "*de minimis* invasion of the plaintiffs' rights" and "not actionable"); *Lohan*, 924 F. Supp. 2d at 455 (name appeared in one of 104 lines in song); *Univ. of Notre Dame Du Lac v. Twentieth Century-Fox Film Corp.*, 22 A.D.2d 452, 454-55 (1st Dep't), *aff'd*, 15 N.Y.2d 940 (1965) (name mentioned twice in 143-page book).

Rather, "to establish liability," a plaintiff "must demonstrate a direct and substantial connection between the appearance of the plaintiff's name or likeness and the main purpose and subject of the work." *Shaw*, 1999 WL 160084, at *7 (quoting *D'Andrea v. Rafla-Demetrious*, 972 F. Supp. 154, 157 (E.D.N.Y. 1997), *aff'd*, 146 F.3d 63 (2d Cir. 1998)). Under this rule, claims based on uses that are visible, but nevertheless not the main subject of the work, should

be dismissed. *Dallesandro v. Henry Holt & Co., Inc.*, 166 N.Y.S.2d 805, 806-07 (1st Dep't 1957) (use on book cover of photo of plaintiff with the book's subject was not actionable), *appeal dismissed,* 7 N.Y.2d 735 (1959) (cited in *Shaw*, 1999 WL 160084, at *7).

Here, Plaintiff fails to allege the Expert Review feature used her name—or any other expert's name—in anything other than an insubstantial, *de minimis* manner. Nor can she. To the contrary, Plaintiff alleges that the Expert Review tool invoked "hundreds" of experts' names. Compl. ¶¶ 3, 21. She accordingly fails to allege the Expert Review tool used *her* name—or any one expert's name—in any significant way.[11] Further, these isolated references were not substantially connected to the "main purpose" of the work, as is required. As Plaintiff acknowledges, Expert Review was but *one feature* among many in the Grammarly product, which is the "work" in question and whose main purpose was to help improve users' writing. Compl. ¶¶ 13-14, 16. Accordingly, references to Plaintiff's name are protected by the incidental-use exception.

## II. The California Right-of-Publicity Claims Must Be Dismissed

Plaintiff's California right-of-publicity claims—whether asserted under California's statutory or common law—must be dismissed. Under New York choice-of-law principles, New

[11] Liability cannot be established by aggregating incidental uses. "[T]he right to privacy established under [Section 51] is personal, and may not be asserted by others." *Pirone v. MacMillan, Inc.*, No. 88-cv-3173, 1989 WL 230549, at *3 (S.D.N.Y. June 28, 1989), *aff'd*, 894 F.2d 579 (2d Cir. 1990). Accordingly, Plaintiff (or any putative class member) can establish Section 51 liability only by showing the use of *their* name was "direct[ly] and substantial[ly] connect[ed]" to "the main purpose and subject of the" Grammarly product. *Shaw*, 1999 WL 160084, at *7 (citation omitted).

York law governs this dispute, and Plaintiff cannot invoke California's right-of-publicity regime. But even if California law applied, Plaintiff's claims fail on the merits.

### A. The California Claims Must Be Dismissed Under Choice-of-Law Principles

New York law governs this dispute. Federal courts apply the choice-of-law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). New York courts apply an interest analysis to tort claims, *see GlobalNet Financial.com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 384 (2d Cir. 2006), under which the "law of the jurisdiction having the greatest interest in the litigation will be applied." *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197 (1985) (citation omitted).

New York courts consistently hold that "'right of publicity' claims are governed by the substantive law of the plaintiff's domicile because rights of publicity constitute personalty." *Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989); *see Champion v. Moda Operandi, Inc.*, 561 F. Supp. 3d 419, 443 (S.D.N.Y. 2021).

The *Sondik v. Kimmel* decision confirms this conclusion in a directly analogous context. 33 Misc. 3d 1237(A) (Sup. Ct., Kings Cnty. 2011), *aff'd*, 131 A.D.3d 1041 (2d Dep't 2015). There, a New York plaintiff asserted both California and New York claims arising from a California-based defendant's use of his likeness. *See id.* at *2. The court dismissed the California claims, holding that "[w]ith respect to the right of privacy, the tort is deemed to occur where plaintiff is injured, and, as plaintiff has pled in the complaint that he resides in New York, his injury occurred in New York, and New York is thus the jurisdiction with the strongest interest in seeing the rights of its citizens vindicated." *Id.* at *3.

The *Cummings v. Soul Train Holdings LLC* court reached the same conclusion. 67 F. Supp. 3d 599 (S.D.N.Y. 2014). The Illinois plaintiff asserted both New York and Illinois claims. *See id.* at 602. The court concluded that the plaintiff's Illinois domicile was dispositive,

explaining: "As Plaintiff may allege right of publicity claims only under Illinois law, Plaintiff's claim under New York law must be dismissed." *Id.*

Here, Plaintiff alleges she is a New York resident. Compl. ¶ 4. Under New York law, Plaintiff's domicile controls, and New York substantive law applies. Thus, Plaintiff's California claims must be dismissed.[12]

**B. The California Right-of-Publicity Claims Fail on the Merits**

Even if Plaintiff could properly assert California right-of-publicity claims here, they fail on the merits. California courts have repeatedly recognized that "the right of publicity was conceived and is most often applied to protect against the unauthorized use of celebrities' name[s] and likeness[es] to advertise or promote a product or service." *Brooks v. Thomson Reuters Corp.*, No. 21-cv-1418, 2021 WL 3621837, at *3 (N.D. Cal. Aug. 16, 2021). Thus, under California law, right-of-publicity claims "involve the unauthorized use of someone's—typically a celebrity's—name or likeness *in commercial advertising or promotions*." *Id*.

Courts have thus dismissed right-of-publicity claims where, as here, the alleged use does not involve promoting or advertising a separate product or service. In *Brooks*, for example, the court rejected a claim based on the defendant's use of individuals' names and likenesses within a product—namely, a database of personal and professional information—holding that such in-

---

[12] California's and New York's laws are materially different, *see Sondik*, 33 Misc. 3d at *3, so the choice-of-law analysis matters. The states' laws have distinct scopes, wherein each state's law asymmetrically imposes liability for some conduct the other state's law does not target. For more analysis on the difference, compare *infra* Section II.B (discussing California law), with *supra* Section I (discussing New York law). *Accord Lightbourne v. Printroom Inc.*, 307 F.R.D. 593, 598 (C.D. Cal. 2015) ("the fifty states' right of publicity laws vary significantly, and these differences are material to this litigation").

product use was "not a misappropriation of [plaintiffs'] name or likeness to advertise or promote a *separate* product or service." *Id.* at *4. The court emphasized that the "use of a person's name and likeness to promote a product … is the essence of an 'appropriation,'" and no such use was alleged where the identity appeared only within the product itself. *Id.* at *5. Moreover, courts have distinguished between using a person's identity to promote a product—which may be actionable—and using a person's identity as part of a product's content or functionality—which is not. *See In re Facebook, Inc.*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019) (product sharing user information with third parties was "categorically different" from using a person's identity "to promote a product or service").

The alleged use here falls outside the purview of California's right-of-publicity law. Plaintiff does not allege her name was used in any advertisement, promotion, or endorsement of Superhuman's products or services. Instead, the alleged use occurred only within the Expert Review feature itself, where her name was referenced next to writing suggestions. That is not the type of promotional or exploitative use California's right-of-publicity law addresses. *See Brooks*, 2021 WL 3621837, at *3. Because Plaintiff does not allege that Superhuman used her identity to advertise or promote its product—as opposed to referencing it within the feature—her California claims should be dismissed.

## III. The Unjust-Enrichment Claim Is Invalid And Must Be Dismissed

Plaintiff's unjust-enrichment claim is not cognizable under either New York or California law. Therefore, it must be dismissed.

New York courts routinely hold that Section 51 "preempts all common law claims based on unauthorized use of name, image, or personality, including unjust enrichment claims." *Lehrman*, 790 F. Supp. 3d at 387 (citation omitted); *see Sondik,* 131 A.D.3d at 1042. Because Plaintiff's unjust-enrichment claim is predicated on her allegation that "the Expert Review tool

… misappropriated the names of Plaintiff and the Class Members," Compl. ¶ 74, her claim is preempted by Section 51.[13]

Even if Plaintiff's unjust-enrichment claim were not preempted, it would still fail on the merits. To state an unjust-enrichment claim under New York law, a plaintiff must allege that (1) the defendant benefited, (2) at the plaintiff's expense, and (3) equity and good conscience require restitution. *Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734, 739 (S.D.N.Y. 2012) (Koeltl, J.). "Courts applying New York law require a plaintiff to allege some expectation of compensation that was denied in order to demonstrate that equity requires restitution." *Id.* at 740. Here, Plaintiff alleges only that Superhuman derived revenue from the challenged use, not that she expected to be paid or that any such expectation was frustrated. Compl. ¶ 73-74. That omission is dispositive.

Plaintiff's unjust-enrichment claim also fails under California law. Courts remain divided on whether unjust enrichment is an independent cause of action at all. *Compare Hooked Media Grp., Inc. v. Apple Inc.*, 269 Cal. Rptr. 3d 406, 417 (Cal. Ct. App. 2020), *review denied in relevant part*, 472 P.3d 1064 (Cal. 2020) ("California does not recognize a cause of action for unjust enrichment"), *with ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) ("[T]his Circuit has construed [California's] common law to allow an unjust enrichment cause of action through quasi-contract"). But even if California law allows a quasi-contract theory of unjust enrichment, that limited theory does not fit this case. *See Griffith v. TikTok, Inc.*, No. 5:23-

---

[13] Plaintiff's unjust-enrichment claim is preempted by Section 51 even though Plaintiff fails to state a claim under Section 51. *See Sondik*, 131 A.D.3d at 1042 (finding lower court "properly granted" defendants' motion to dismiss unjust-enrichment claim because it was preempted by Section 51, even though court also "properly" dismissed Section 51 claim); *Lohan*, 924 F. Supp. 2d at 455-56 (dismissing unjust-enrichment claim as "subsumed under [Section 51]," even though court also dismissed Section 51 claim (citation omitted)).

cv-964, 2023 WL 9019035, at *6 (C.D. Cal. Dec. 13, 2023). Plaintiff does not allege that she paid money to Superhuman, entered into a contract with Superhuman that was later voided or rescinded, or otherwise conferred a direct transactional benefit on Superhuman through mistake, fraud, coercion, or request. Her theory merely is that Superhuman earned subscription revenue from third parties by allegedly using her name. Compl. ¶¶ 73-76. That is not quasi-contract; it is the same failed publicity-right theory repackaged as restitution.

Nor is there any reason to expand California's unjust enrichment law here. As *Hooked Media Group* explains, "California does not recognize a cause of action for unjust enrichment." 269 Cal. Rptr. 3d at 417. Plaintiff's unjust-enrichment claims therefore should be dismissed.

## IV. Plaintiff's Claims Are Preempted by the Copyright Act

To the extent Plaintiff's claims turn on the unauthorized use of her published work, they are preempted by the Copyright Act. The Act preempts state-law claims that control the use of works within the copyright's subject matter and assert rights equivalent to those protected by federal law. *See Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 302-03 (2d Cir. 2022). In copyright preemption, courts distinguish between claims targeting a defendant's use of a plaintiff's persona and claims that seek to control the use of the plaintiff's work. *See id.* at 303. Where the value derives from the use of the work itself—rather than from an independent exploitation of the plaintiff's identity—the claim is preempted. *Id.*

That is the case here. To the extent Plaintiff alleges Expert Review derived value from analyzing her writing and generating suggestions, any value flows from the use of her published work, not from an independent commercial exploitation of her persona. The feature operates by drawing on publicly available writing to generate suggestions; any association with Plaintiff's name reflects the source of those stylistic elements, rather than use of her identity.

Under *Melendez*, such a claim is properly understood as targeting the use of the underlying work and is therefore preempted.

Courts are wary of attempts to recast claims grounded in the use of creative works as right-of-publicity claims. For example, in *In re Jackson*, 972 F.3d 25 (2d Cir. 2020), the court rejected a similar effort, holding that a plaintiff could not use a publicity theory to control the unauthorized use of a song, describing the claim as "little more than a thinly disguised effort to exert control over" the work itself, *id.* at 39. To the extent Plaintiff seeks to challenge the use of her published work in generating writing advice, that claim sounds in copyright and cannot proceed under state law.

## CONCLUSION

For the foregoing reasons, Superhuman respectfully requests that the Court dismiss the Complaint in its entirety, with prejudice.[14]

[14] For the reasons described in this Motion, the Complaint challenges Superhuman's "lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest" under New York's anti-SLAPP law, N.Y. Civ. Rts. L. § 76-a(1)(a)(2), and the Complaint lacks a "substantial basis in law and fact." *Id.* § 70-a(1)(a). Superhuman reserves its right to seek recovery of its costs and attorney's fees. *Id.*; *Heilbut v. Cassava Scis., Inc.*, 778 F. Supp. 3d 551, 569 (S.D.N.Y. 2025).

Dated: June 15, 2026
New York, New York

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP

*/s/ Dori Ann Hanswirth*

Dori Ann Hanswirth
Theresa M. House
250 W. 55th St.
New York, NY 10019
(212) 918-3000
Dori.Hanswirth@arnoldporter.com
Theresa.House@arnoldporter.com

Daniel Raymond (*pro hac vice*)
300 North LaSalle Dr.
Suite 3500
Chicago, IL 60654
(312) 583-2379
Daniel.Raymond@arnoldporter.com

*Attorneys for Defendant Superhuman Platform Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2026, I caused the foregoing to be electronically filed with the Clerk of Court using CM/ECF, which will send notification of such filing to all registered participants.

*/s/ Dori Ann Hanswirth*
Dori Ann Hanswirth

## CERTIFICATE OF COMPLIANCE

In compliance with Local Rule 7.1(c) and Individual Practice III(d), I hereby certify that the foregoing consists of 6,994 words, not including the material excluded under Local Rule 7.1.

*/s/ Dori Ann Hanswirth*
Dori Ann Hanswirth